Vickie L. Driver
Texas Bar No. 24026886
Christina W. Stephenson
Texas Bar No. 24049535
**HUSCH BLACKWELL LLP**
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Phone: (214) 999-6100
Fax: (214) 999-6170
Email: vickie.driver@huschblackwell.com
Email: crissie.stephenson@huschblackwell.com

**COUNSEL FOR THE DEBTORS**

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHER DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **FOUNDATION HEALTHCARE, INC.,** | § | **CASE NO. 17-42571-rfn-11** |
| | § | **Lead Case** |
| **DEBTOR.** | § | |
| | § | **Complex Case** |
| -------------------------------------------------------------- § | | **Jointly Administered** |
| | § | |
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **UNIVERSITY GENERAL HOSPITAL, LLC,** | § | **CASE NO. 17-42570-rfn-11** |
| | § | |
| **DEBTOR.** | § | **Complex Case** |
| | § | **Jointly Administered** |
| -------------------------------------------------------------- § | | **Under Lead Case** |

**DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
DATED AS OF AUGUST 8, 2017**

## TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION ........................................................................... 5
    1.1    Introduction.......................................................................................... 5
    1.2    General Plan Structure. ....................................................................... 5

ARTICLE 2 DEFINITIONS AND INTERPRETATION ................................... 6
    2.1    Definitions........................................................................................... 6
    2.2    Interpretation, Rules of Construction, and Other Terms..................... 18

ARTICLE 3 CLASSIFICATION OF CLAIMS AND INTERESTS ................... 19
    3.1    Administrative Expenses and Priority Tax Claims............................... 19
    3.2    Classes of Claims and Interests........................................................... 19
    3.3    Identification of Classes...................................................................... 19
    3.4    Voting and Acceptance by Impaired Classes of Claims...................... 21
    3.5    Elimination of Classes for Voting Purposes. ...................................... 21
    3.6    Controversy Concerning Classification, Impairment or Voting Rights............... 21

ARTICLE 4 TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS ................. 21
    4.1    Administrative Expense Claims........................................................... 21
    4.2    Priority Tax Claims............................................................................. 23
    4.3    Payment of Statutory Fees. ................................................................. 23
    4.4    Disallowance of Special Taxes. .......................................................... 23

ARTICLE 5 TREATMENT OF CLASSES .................................................... 24
    5.1    Treatment of FHI Class 1 and UGH Class 1 – Allowed Secured Claims of Prepetition Lenders. .............................................................. 24
    5.2    Treatment of Class 2 – Allowed Secured Tax Claims......................... 25
    5.3    Treatment of Class 3 – Allowed Other Secured Claims...................... 25
    5.4    Treatment of FHI Class 4 and UGH Class 4– Allowed Priority Non-Tax Claims. ................................................................................... 26
    5.5    Treatment of FHI Class 5 and UGH Class 5 – Allowed General Unsecured Claims. ............................................................................. 26
    5.6    Treatment of FHI Class 6 and UGH Class 6 – Interests. ..................... 27

ARTICLE 6 CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE ...... 27
    6.1    Conditions Precedent to Occurrence of the Effective Date. ................ 27
    6.2    Notice of Occurrence of Effective Date.............................................. 27

ARTICLE 7 PLAN IMPLEMENTATION ....................................................... 28
    7.1    General Matters. .................................................................................. 28
    7.2    Post-Effective Date Governance.......................................................... 28
    7.3    Continuing Existence. ......................................................................... 28
    7.4    Plan Administrator. ............................................................................. 29
    7.5    Reporting............................................................................................ 30
    7.6    Exculpation of Plan Administrator. ..................................................... 30
    7.7    Payment of Fees and Expenses to Plan Administrator. ....................... 30

| | | |
|---|---|---|
| 7.8 | Liquidation of Assets. | 31 |
| 7.9 | Investments. | 31 |
| 7.10 | Accounts. | 31 |
| 7.11 | Plan Administrator Indemnification. | 31 |
| 7.12 | Resignation, Replacement, or Termination of Plan Administrator | 31 |
| 7.13 | Effectiveness of Securities, Instruments, and Agreements. | 31 |
| 7.14 | Approval of Agreements. | 32 |
| 7.15 | Cancellation and Surrender of Existing Securities. | 32 |
| 7.16 | Release of Liens and Perfection of Liens. | 32 |
| 7.17 | Further Transactions. | 32 |
| 7.18 | Entry of Final Decree. | 32 |
| 7.19 | Retention of Rights to Pursue Causes of Action. | 33 |

**ARTICLE 8 DISPUTED CLAIMS, DISPUTED INTERESTS, AND MISCELLANEOUS DISTRIBUTION PROVISIONS** ... 34

| | | |
|---|---|---|
| 8.1 | Objections. | 34 |
| 8.2 | Amendments to Claims; Claims Filed After the Confirmation Date | 34 |
| 8.3 | Distributions. | 34 |
| 8.4 | Distributions on Account of Disputed Claims. | 34 |
| 8.5 | Undeliverable or Unclaimed Distributions. | 34 |
| 8.6 | Allocation of Consideration. | 35 |
| 8.7 | Transmittal of Distributions and Notices. | 35 |
| 8.8 | Method of Cash Distributions. | 36 |
| 8.9 | Distributions on Non-Business Days. | 36 |
| 8.10 | Withholding Taxes. | 36 |
| 8.11 | Setoffs. | 36 |
| 8.12 | Charitable Gift. | 37 |

**ARTICLE 9 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ... 37

| | | |
|---|---|---|
| 9.1 | Rejection of Executory Contracts. | 37 |
| 9.2 | Bar Date for Filing Rejection Claims. | 37 |

**ARTICLE 10 RELEASES; PLAN INJUNCTION; EXCULPATION** ... 38

| | | |
|---|---|---|
| 10.1 | Releases. | 38 |
| 10.2 | Injunction. | 39 |
| 10.3 | Exculpation. | 40 |

**ARTICLE 11 MISCELLANEOUS** ... 41

| | | |
|---|---|---|
| 11.1 | Conflicts Between Plan and Confirmation Order. | 41 |
| 11.2 | Term of Injunction or Stays. | 41 |
| 11.3 | Retention of Jurisdiction. | 41 |
| 11.4 | Successors and Assigns. | 43 |
| 11.5 | Cram Down. | 43 |
| 11.6 | Modification of the Plan. | 43 |
| 11.7 | Withdrawal or Revocation of the Plan. | 43 |
| 11.8 | Notices. | 44 |

11.9    Governing Law. ............................................................................................ 44

11.10   Severability. ................................................................................................. 44

11.11   All Claims. .................................................................................................... 44

University General Hospital, LLC and Foundation Healthcare, Inc. (together, the "**Debtors**"), as debtors and debtors-in-possession, propose and hereby file this *Debtors' First Amended Joint Chapter 11 Plan of Liquidation Dated as of August 8, 2017*.

# ARTICLE 1

# INTRODUCTION

## 1.1 Introduction.

This Plan is proposed by and on behalf of the Debtors pursuant to Section 1121(a) of the Bankruptcy Code for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, results of operations, historical financial information and properties, and for a summary and analysis of the Plan.

All holders of Claims against the Debtors are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved by the Debtors for use in soliciting acceptances or rejections of this Plan.

## 1.2 General Plan Structure.

The majority of the Debtors' assets were foreclosed upon prior to the filing of the Cases. The Plan provides for the liquidation of the Debtors' remaining assets, including the pursuit of Causes of Action, and the distribution of the net proceeds to holders of Allowed Claims.

The execution and consummation of this Plan will be facilitated through the Plan Administrator. The Plan Administrator will be designated in the Plan Supplement to be Filed not less than ten (10) days prior to the Confirmation Hearing. The Plan Administrator shall be authorized pursuant to the terms of this Plan to act on behalf of the Debtors to administer and liquidate, as appropriate, the Debtors' assets, investigate and pursue Causes of Action, and make Distributions pursuant to the terms of the Plan.

Though the Plan is styled a "Joint Plan," the Plan as drafted consists of two (2) separate Plans – one for each Debtor. The Cases are not substantively consolidated and the liquidation of assets and treatment of Claims for each Debtor will be separately maintained and administered. Without limiting other provisions of the Plan, the Debtors specifically reserve the right to withdraw the Plan from consideration for confirmation as to both Debtors if the Plan is not confirmed as to both Debtors.

## ARTICLE 2

## DEFINITIONS AND INTERPRETATION

In addition to such other terms as may be defined in other provisions of the Plan, the following capitalized terms shall have the following meanings:

**2.1 Definitions.**

      **2.1.1** "**Additional Plan Administration Funding**" shall mean the amount of $250,000, less the sum of (a) the Initial Plan Administration Funding, and (b) the sum of the total amount of Allowed Priority Tax Claims, that shall be funded as set forth in Article 5.1.3 hereof.

      **2.1.2** "**Administrative Expense Claim"** shall mean (a) any cost or expense of administration in connection with these Cases of a kind specified in Sections 364(c)(1), 503(b), or 507(a)(1) of the Bankruptcy Code, including without limitation, the actual, necessary costs and expenses of preserving the Estates, including wages, salaries, or any other compensation for services rendered on or after the Petition Date, (b) Professional Claims, and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

      **2.1.3** "**Administrative Expense Claim Bar Date**" shall mean the date which is thirty (30) days following the Effective Date.

      **2.1.4** "**Allowed**" shall mean, with respect to Claims and Interests, (a) any Claim against or Interest in the Debtors, proof of which is timely Filed or by order of the Court is not or will not be required to be Filed; (b) any Claim or Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent, nor unliquidated, and for which no timely controverting Filed proof of Claim has been Filed; (c) any Interest registered in the Debtors' books and records as of the Petition Date; or (d) any Claim allowed pursuant to the Plan and, in each such case in (a), (b), and (c) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or (ii) such an objection is so Filed and the Claim or Interest shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

      **2.1.5** "**Amended Charter and By-laws"** shall mean the amended charters and by-laws of the Liquidating Debtors as modified by this Plan and the Confirmation Order.

      **2.1.6** "**Ankura**" shall mean Ankura Consulting Group.

      **2.1.7** "**Available Cash"** shall mean Cash assets in the Estates available to fund operations of the applicable Debtor or Liquidating Debtor.

      **2.1.8** "**Ballot**" shall mean the ballot form on which holders of Impaired Claims entitled to vote on the Plan indicate their acceptance or rejection of the Plan.

**2.1.9** "**Balloting Agent**" shall mean Donlin, Recano & Company, Inc., the agent for the Debtors to prepare and send out Solicitation Packages for voting on the Plan, and to tabulate the results and certify them to the Court.

**2.1.10** "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as subsequently amended, principally codified at 11 U.S.C. §§ 101, *et seq.* Unless otherwise stated herein or the Disclosure Statement, all references to "Section" are to the Bankruptcy Code.

**2.1.11** "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as subsequently amended, and, where appropriate, the Local Bankruptcy Rules of the Court.

**2.1.12** "**Business Day**" shall mean any day except Saturday, Sunday, or legal holiday in the State of Texas.

**2.1.13** "**Cases**" shall mean the voluntary Chapter 11 cases filed by the Debtors on the Petition Date, currently pending in the Court and assigned case numbers 17-42570 and 17-42571.

**2.1.14** "**Cash**" shall mean cash and cash equivalents that evidence immediately available funds, including, without limitation, currency, certified checks, cashier's checks, or wire transfers of immediately available funds from any source or a check drawn on a domestic bank.

**2.1.15** "**Cash Collateral**" shall have the meaning set forth in Section 363(a) of the Bankruptcy Code.

**2.1.16** "**Cause of Action**" shall mean any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, Claim, or other liability (including a derivative claim) whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity, or otherwise, including (a) Chapter 5 Causes of Action; (b) damages (general, exemplary, or both) relating to or based on (i) contract, fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, or (v) causes of action based upon alter ego or other liability theories; (c) damages based on any other claim of the Debtors, to the extent not specifically compromised or released pursuant to the Plan or an agreement referred to, or incorporated into, the Plan or Final Order entered after notice and opportunity for hearing; (d) any claim of the Debtors for equitable subordination under Section 510(c) of the Bankruptcy Code or under other applicable laws; (e) any claim of the Debtors to recharacterize one or more Claims as Interests; and (f) any unresolved objection to any Disputed Claim.

**2.1.17** "**Cautionary Statements**" shall have the meaning ascribed to it in section V.A. of the Disclosure Statement.

**2.1.18** "**Chapter 5 Cause of Action**" shall mean any Cause of Action arising under Sections 510, 544 through 551, and 553 of the Bankruptcy Code or otherwise arising under the Bankruptcy Code.

**2.1.19** "**Chapter 11**" shall mean Chapter 11 of the Bankruptcy Code.

**2.1.20** "**Claim**" shall mean a claim as defined in Section 101(5) of the Bankruptcy Code.

**2.1.21** "**Claims Objection Deadline**" shall mean the date which is one hundred-twenty (120) days following the Effective Date but which may be further extended by Order of the Court.

**2.1.22** "**Class**" shall mean any group of substantially similar Claims or Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

**2.1.23** "**Collateral**" shall mean any property of a Debtor or a Debtor's Estate, or any interest of a Debtor's or its Estate's, that is subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code.

**2.1.24** "**Collateral Retention Agreement**" shall mean that certain Notice and Agreement to Retain Collateral in Partial Satisfaction of Obligations, dated effective as of June 15, 2017, among UGH, FHI, the Prepetition Agent, the Prepetition Lenders, and the Obligated Parties (as defined in the Credit Agreement), pursuant to which the Prepetition Agent, for and on behalf of the Prepetition Lenders, retained the Intercompany Note, in partial satisfaction of FHI's indebtedness under the FHI Prepetition Credit Agreement.

**2.1.25** "**Confirmation**" shall mean the entry of a Confirmation Order.

**2.1.26** "**Confirmation Date**" shall mean the date the Confirmation Order is entered on the docket for the Cases maintained by the Clerk of the Court.

**2.1.27** "**Confirmation Hearing**" shall mean the hearing held by the Court regarding Confirmation of the Plan, as such may be continued from time to time, pursuant to Section 1129 of the Bankruptcy Code.

**2.1.28** "**Confirmation Notice**" shall mean notice of the Confirmation Hearing, substantially in the same formed approved by the Court pursuant to the Order Conditionally Approving Disclosure Statement.

**2.1.29** "**Confirmation Order**" shall mean the order signed by the Court and caused to be entered that confirms this Plan pursuant to Section 1129 of the Bankruptcy Code, as may be thereafter amended or supplemented.

**2.1.30** "**Court**" shall mean the United States Bankruptcy Court for the Northern District of Texas or, if such court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Cases.

**2.1.31** "**Creditor**" shall mean any Entity that is the holder of a Claim that arose on or before the Petition Date or a Claim of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**2.1.32** "**DIP Administrative Agent**" shall mean TCB, in its capacity as administrative agent under the DIP Loan.

**2.1.33** "**DIP Administrative Claim**" shall have the meaning assigned to the term in Section 4.1.1.

**2.1.34** "**DIP Lenders**" shall mean TCB, LegacyTexasBank and INTRUST Bank, each in their capacity as lenders under the DIP Loan, pursuant to the Final DIP Order.

**2.1.35** "**DIP Loan**" shall mean the post-petition secured superpriority loan(s) made by the DIP Lenders to the Debtors and approved by the Court pursuant to the Final DIP Order.

**2.1.36** "**Debtors**" shall mean University General Hospital, LLC and Foundation Healthcare, Inc., as debtors and debtors-in-possession. Reference to "**Debtor**" shall mean to such individual Debtor, as a debtor and debtor-in-possession, as the case may be.

**2.1.37** "**Deficiency Claim**" shall mean the amount by which an Allowed Claim exceeds the value of any Collateral securing such Claim as may be determined by the Court in accordance with Section 506(a) of the Bankruptcy Code. A Deficiency Claim is a General Unsecured Claim but only if the holder of the Claim had recourse against the particular Debtor prior to any foreclosure on the Collateral.

**2.1.38** "**Disclosure Statement**" shall mean that certain *Disclosure Statement in Support of the Debtors' First Amended Joint Chapter 11 Plan of Liquidation Dated as of August 8, 2017* accompanying this Plan, as approved by the Court for distribution pursuant to Section 1125 of the Bankruptcy Code and the Order Conditionally Approving Disclosure Statement, together with any amendments or modifications thereto.

**2.1.39** "**Disputed Claim**" shall mean the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been Filed, or deemed Filed under applicable law or order of the Court; (b) an objection has been or may be timely Filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be Filed, a Claim shall be considered a Disputed Claim (A) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by the Debtors in the Schedules, to the extent of such

excess, (B) in its entirety, if any corresponding Claim scheduled by the Debtors has been scheduled as disputed, contingent, or unliquidated in the Schedules, or (C) in its entirety, if no corresponding Claim has been scheduled by the Debtors in its Schedules. It may also refer to a Disputed Claim in a specified Class. For example, a Disputed General Unsecured Claim is a Disputed Claim in the General Unsecured Claims Class.

**2.1.40** "**Distribution**" shall mean any property delivered or payment made under the Plan.

**2.1.41** "**Effective Date**" shall mean a Business Day selected by the Debtors that is the first Business Day on which all conditions to the occurrence of the Effective Date have been satisfied or duly waived, including without limitation confirmation of the Plan and the Confirmation Order having become unappealable.

**2.1.42** "**Entity**" shall mean any individual, corporation, partnership, joint venture, association, joint stock company, unincorporated organization, estate, trust, governmental unit, or other entity, including the Debtors and the United States Trustee, whether singular or plural.

**2.1.43** "**Equipment Leases**" shall mean those certain equipment lease agreements between the Debtors and First Financial Corporate Leasing, LLC, Med One Capital Funding, LLC, and Toshiba American Medical Credit, a program of Toshiba America Medical Systems, Inc. whereby the Debtors leased certain medical equipment.

**2.1.44** "**Estates**" shall mean the bankruptcy estates created in these Cases pursuant to Section 541 of the Bankruptcy Code.

**2.1.45** "**Exculpated Parties**," or each an "**Exculpated Party**" shall mean the Debtors and the Released Parties.

**2.1.46** "**Face Amount**" shall mean (a) with respect to a particular Claim, (i) if the Claim is listed in the Schedules and the holder of such Claim did not File a proof of Claim within the applicable period of limitation fixed by the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, or other applicable law, the amount of such Claim that is listed in the Schedules as not disputed, contingent, or unliquidated, or (ii) if the holder of such Claim has Filed a proof of Claim with the Court within the applicable period of limitation fixed by the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, or other applicable law, the liquidated amount stated in such proof of Claim, or such amount as is determined by the Final Order of the Court; (b) in the case of an Administrative Expense Claim, the liquidated amount set forth in any application Filed with respect thereto, or the amount set forth in the Debtors' books and records or such amount as is determined pursuant to a Final Order; or (c) in all other cases, zero or such amount as shall be fixed or estimated pursuant to a Final Order.

**2.1.47** "**FHGH**" shall mean Foundation Hospital General of Houston, LLC.

**2.1.48** "**FHI**" shall mean Foundation Healthcare, Inc., an Oklahoma corporation, one of the Debtors.

**2.1.49** "**FHI Lease**" shall mean that certain *Office Lease Agreement* dated January 18, 2016 between FHI and Memorial Hefner Parkway, LLC, an Oklahoma limited liability company, pursuant to which FHI leases corporate office space located at 13900 N. Portland, Oklahoma City, Oklahoma 73134.

**2.1.50** "**FHI Prepetition Credit Agreement**" shall mean that certain Credit Agreement, dated as of December 31, 2015, among FHI, as borrower, the Prepetition Agent, and the Prepetition Lenders.

**2.1.51** "**FHI Prepetition Indebtedness**" shall mean the amount due and owing by FHI to the Prepetition Lenders under the FHI Prepetition Indebtedness Documents, plus accrued but unpaid interest (including pre-petition default interest) and fees and all other fees, expenses, charges, and other amounts due under the FHI Credit Agreement, which is deemed to be $6,284,895.28.

**2.1.52** "**FHI Prepetition Indebtedness Documents**" shall mean the FHI Prepetition Credit Agreement, the FHI Prepetition Note, the FHI Prepetition Security Documents, and all other related agreements, documents, and financing statements and documents executed in connection with the FHI Prepetition Credit Agreement, together with any amendments and restatements thereto.

**2.1.53** "**FHI Prepetition Note**" shall that certain Promissory Note dated as of December 31, 2015, executed by FHI and payable to the Prepetition Agent, for and on behalf of the Prepetition Lenders, evidencing, without limitation, loans made to FHI under the FHI Credit Agreement.

**2.1.54** "**FHI Prepetition Security Documents**" shall mean that certain Security Agreement, dated December 31, 2015, and that certain Deed of Trust, dated December 31, 2015, providing the Prepetition Lenders a security interest in substantially all of the FHI's assets, including without limitation, the Intercompany Note and the Intercompany Security Agreement.

**2.1.55** "**FHI Schedules**" shall mean FHI's Schedules of Assets and Liabilities, Filed on July 6, 2017, including all amendments and restatements thereto Filed through the date of the conditional approval of the Disclosure Statement (Docket No. 36).

**2.1.56** "**FHI SOFA**" shall mean FHI's Statements of Financial Affairs, Filed on July 6, 2017, including all amendments and restatements thereto Filed through the date of the conditional approval of the Disclosure Statement (Docket No. 37).

**2.1.57** "**File**" or "**Filed**" or "**Filing**" shall mean file or filed or filing with the Court in these Cases.

**2.1.58** "**Final DIP Order**" shall mean the Final Order (1) Authorizing Secured Post-Petition Financing; (2) Authorizing the Use of Cash Collateral; (3) Granting Security Interests, Superpriority Claims, and Other Adequate Protection; (4) Modifying the Automatic Stay; and (5) Scheduling a Final Hearing, entered by the Court on July 20, 2017 (Docket No. 72).

**2.1.59** "**Final Order**" shall mean an order or judgment of a court that has not been reversed, amended, vacated, or stayed and as to which (a) the time to appeal or to seek certiorari or review has expired and as to which no appeal or petition for certiorari or review has been timely filed, or (b) any timely filed appeal or petition for certiorari or review has been finally determined or dismissed; *provided, however*, that the possibility or reality that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause such order not to be a Final Order.

**2.1.60** "**FSHA**" shall mean Foundation Surgical Hospital Affiliates, LLC.

**2.1.61** "**FSHH**" shall mean Foundation Surgical Hospital Holdings, LLC.

**2.1.62** "**FSHM**" shall mean Foundational Surgical Hospital Management, LLC.

**2.1.63** "**General Unsecured Claim**" shall mean any Claim that is not an Administrative Expense Claim, a Priority Tax Claim, the Secured Claim of TCB, or a Secured Tax Claim. General Unsecured Claim includes Deficiency Claims.

**2.1.64** "**Governmental Unit**" shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

**2.1.65** "**Hospital**" shall mean Foundation Surgical Hospital of Houston, the surgically focused, 69-bed hospital located in the Texas Medical Center at 7501 Fannin Street in Houston, Texas and operated by UGH.

**2.1.66** "**Impaired**" shall have the meaning as set forth in Section 1124 of the Bankruptcy Code.

**2.1.67** "**Incorporated Materials**" shall mean the Disclosure Statement and the materials incorporated by reference therein.

**2.1.68** "**Indebtedness Documents**" shall mean collectively, the FHI Prepetition Indebtedness Documents and the Intercompany Indebtedness Documents.

**2.1.69** "**Indemnified Parties**," or each an "**Indemnified Party**" shall mean the Plan Administrator and its agents, representatives, attorneys, professionals, and employees.

**2.1.70** "**Initial Plan Administration Funding**" shall mean either (a) if the total amount of Available Cash in the Estates is greater than $50,000 as of the Initial Plan

Administration Funding Date, the amount of Available Cash in the Estates up to a maximum amount of $100,000, or (b) if the total amount of Available Cash in the Estates is less than $50,000 as of the Initial Plan Administration Funding Date, the amount of $50,000, consisting of (i) all Available Cash, and (ii) funding from the DIP Lenders in an amount equal to $50,000 less the total amount of Available Cash in the Estates on the Initial Plan Administration Funding Date.

2.1.71 "**Initial Plan Administration Funding Date**" shall mean the first Business Day after the Effective Date.

2.1.72 "**Intercompany Indebtedness Documents**" shall mean collectively, the Intercompany Note, the Intercompany Security Agreement, and all other related agreements, documents, and financing statements executed in connection with the Intercompany Note, together with any amendments and restatements thereto.

2.1.73 "**Intercompany Loan**" shall mean that certain loan made by FHI to UGH on or around December 31, 2015, in the principal amount of $12,605,000.00.

2.1.74 "**Intercompany Note**" shall mean that certain Intercompany Promissory Note, dated December 31, 2015, evidencing the Intercompany Loan, and secured by the Intercompany Security Agreement, which was retained by the Prepetition Lenders pursuant to the Collateral Retention Agreement.

2.1.75 "**Intercompany Security Agreement**" shall mean that certain Intercompany Security Agreement, dated December 31, 2015 pursuant to which UGH granted FHI a security interest in substantially all of UGH's assets, which was retained by the Prepetition Lenders pursuant to the Collateral Retention Agreement.

2.1.76 "**Interest**" shall mean any membership interest in a Debtor.

2.1.77 "**Lien**" shall mean any security interest, charge against, encumbrance on, or other interest in property, the purpose of which is to secure payment of a debt or performance of an obligation.

2.1.78 "**Liquidating Debtors**" shall be how the Debtors will be referred to after Confirmation of the Plan and occurrence of the Effective Date.

2.1.79 "**Liquidation Value**" shall mean the aggregate dollar amount that would be generated if the Debtors' Cases were converted to chapter 7 and a chapter 7 trustee liquidated the Debtors' assets.

2.1.80 "**Non-Voting Classes**" shall mean Classes 2, 3, and 6, collectively.

2.1.81 "**Order Conditionally Approving Disclosure Statement**" shall mean that Order (1) Conditionally Approving the Disclosure Statement, (2) Approving Form of Notice of Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (3) Establishing Procedures for Voting on the Plan, (4), Fixing

Date for Returning Acceptances or Rejections of the Plan, (5) Fixing Date for Filing Objections to the Disclosure Statement and Confirmation, (6) Setting Deadlines by Which Governmental Entities Must File Proofs of Claim, and (7) Setting Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan entered by the Court on August 8, 2017 (Docket No. 102).

**2.1.82** "**Other Secured Claim**" shall mean a Secured Claim other than a Secured Claim of the Prepetition Lenders or a Secured Tax Claim.

**2.1.83** "**Petition Date**" shall mean June 21, 2017, the date the Cases were commenced.

**2.1.84** "**Plan**" shall mean this *Debtors' First Amended Joint Chapter 11 Plan of Liquidation Dated as of August 8, 2017,* including any amendments or modifications hereto as may hereafter be Filed in accordance with the requirements of Section 1127 of the Bankruptcy Code.

**2.1.85** "**Plan Administrator**" shall mean the person appointed and designated, effective as of the Effective Date with the approval of the Court, as the fiduciary responsible for, among other things, those things set for in Section 7.3.2 of the Plan.

**2.1.86** "**Plan Administration Agreement**" shall mean the agreement, to be executed pursuant to Article 7.4.3 of the Plan, setting forth the rights, powers, and duties of the Plan Administrator to carry out the terms of the Plan and wind down the Estates.

**2.1.87** "**Plan Administration Funding**" shall mean, collectively, the Initial Plan Administration Funding and the Additional Plan Administration Funding (if any).

**2.1.88** "**Plan Documents**" shall mean the agreements, documents, and instruments required to implement the terms of the Plan, contemplated in the Plan, or entered into in furtherance of the Plan, copies of which shall be available upon request to Debtors' counsel.

**2.1.89** "**Plan Supplement**" shall mean the Plan Administration Agreement, the designation of the person to serve as the initial Plan Administrator and any other relevant documents or agreements, to be Filed on or before the date ten (10) days prior to the Confirmation Hearing.

**2.1.90** "**Post-Petition Tax Claim**" shall mean requests for payment of Administrative Expense Claims and other Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, which accrued or was assessed within the period from and including the Petition Date through and including the Effective Date.

**2.1.91** "**Post-Petition Tax Claim Bar Date**" shall mean either (a) any date previously established by the Court for filing such claims; or if no such date has previously been established (b) the later of (i) 45 days following the Effective Date, and

(ii) 90 days following the filing with the applicable governmental unit of the tax return for such taxes for such tax year or period.

**2.1.92** "**Prepetition Agent**" shall mean TCB, as Administrative Agent under the Prepetition Credit Agreement.

**2.1.93** "**Prepetition Lenders**" shall mean the lenders from time to time party to the Credit Agreement, which are currently TCB, LegacyTexasBank and INTRUST Bank.

**2.1.94** "**Priority Claim**" shall mean a Claim that is either a Priority Tax Claim or a Priority Non-Tax Claim.

**2.1.95** "**Priority Non-Tax Claim**" shall mean a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

**2.1.96** "**Priority Tax Claim**" shall mean a Claim entitled to priority in payment pursuant to Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**2.1.97** "**Professional**" shall mean each Entity either (a) employed by an order of the Court in accordance with Sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) seeking compensation and reimbursement pursuant to Section 503(b)(2) or (4) of the Bankruptcy Code.

**2.1.98** "**Professional Claim**" shall mean an Administrative Expense Claim of a Professional for (a) compensation or reimbursement of actual and necessary costs and expenses relating to services provided after the Petition Date and prior to and including the Effective Date, or (b) for compensation and reimbursement that is allowed by the Court pursuant to Section 503(b)(2) or (4) of the Bankruptcy Code.

**2.1.99** "**Proof of Claim Bar Date**" shall mean and be October 26, 2017, for the Filing of proofs of Claim and proofs of Interest by all parties other than governmental units, and shall mean and be December 26, 2017, for the Filing of proofs of Claims by all governmental units. The Proof of Claim Bar Date was the last date on which proofs of Claim or proofs of Interest could be timely Filed against the Debtors.

**2.1.100** "**Pro Rata**" shall mean the proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class.

**2.1.101** "**Rejection Claim**" shall mean any Claim arising from the rejection of any executory contract or unexpired lease pursuant to this Plan, including, but not limited to, any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with Section 502(b)(6) of the Bankruptcy Code; or (b) an employee for damages resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with Section

502(b)(7) of the Bankruptcy Code. A Rejection Claim shall constitute a General Unsecured Claim.

**2.1.102** "**Rejection Damages Bar Date**" shall mean, unless otherwise established by Final Order of the Court, the date established pursuant to Section 365 of the Bankruptcy Code but in no event later than thirty (30) days after the Effective Date.

**2.1.103** "**Released Parties**," or each a "**Released Party**" shall mean, (a) the Debtors' Chief Restructuring Officer employed by Final Order of the Court in the Cases and each consultant, financial advisor, attorney, accountant, and other representative of the Debtors, (b) the Prepetition Agent, (c) the DIP Administrative Agent, (d) the DIP Lenders, (e) the Prepetition Lenders, and (f) Richard Zahn, Steven List, and Lorin Patterson, in their capacity as members of FHI's prepetition Board of Directors.

**2.1.104** "**Releasing Parties,**" or each a "**Releasing Party**" shall mean (i) the holders of all Claims or Interests who vote to accept the Plan; (ii) the holders of Claims or Interests that are Unimpaired under the Plan; (iii) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan; and (iv) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein.

**2.1.105** "**Schedules**" shall mean the FHI Schedules and the UGH Schedules.

**2.1.106** "**Secured Claim**" shall mean a Claim that arose before the Petition Date, to the extent secured by a Lien or other security interest on property of the Debtors, which Lien is valid, perfected, and enforceable under applicable law and which is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Cases, to the extent of the value of such property (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined pursuant to a Final Order in accordance with Section 506(a) or, as applicable, Section 553 to the extent of such setoff.

**2.1.107** "**Secured Tax Claim**" shall mean a Secured Claim of a Governmental Unit for property taxes assessed or for property taxes if and to the extent that the Lien securing such Claim attached under applicable law before the commencement of the Cases.

**2.1.108** "**SOFAS**" shall mean the FHI SOFA and the UGH SOFA.

**2.1.109** "**Solicitation Package**" shall mean the package sent by the Balloting Agent to Holders of Claims in Classes 1, 4, and 5 including (a) ballot (and return envelope) to be used in voting to accept or to reject the Plan; (b) the Disclosure Statement and Plan; (c) the Order Conditionally Approving Disclosure Statement, (d) the notice of, among other things, (i) the date, time and place of the hearing to consider confirmation of the Plan and related matters and (ii) the deadline for filing objections to confirmation of the Plan; and (d) other materials as authorized by the Court.

**2.1.110** "**Tabulation Rules**" shall tabulation procedures described in section VI.D. of the Disclosure Statement.

**2.1.111** "**TCB**" shall mean Texas Capital Bank, NA.

**2.1.112** "**UGH**" shall mean University General Hospital, LLC, a Texas limited liability company, one of the Debtors.

**2.1.113** "**UGH Lease**" shall mean that certain *Lease Agreement* dated July 21, 20005, as thereafter amended, between UGH and Cambridge Properties, pursuant to which UGH leases the real property and fixtures on which the Hospital operates.

**2.1.114** "**UGH Prepetition Indebtedness**" shall mean the amount due and owing by UGH to the Prepetition Lenders under the Intercompany Indebtedness Documents, plus accrued but unpaid interest (including pre-petition default interest) and fees and all other fees, expenses, charges and other amounts due under the Intercompany Indebtedness Documents, which is deemed to be $7,622,000.00.

**2.1.115** "**UGH Schedules**" shall mean UGH's *Schedules of Assets and Liabilities*, Filed on July 6, 2017, including all amendments and restatements thereto Filed through the date of the conditional approval of the Disclosure Statement (Docket No. 42).

**2.1.116** "**UGH SOFA**" shall mean UGH's *Statements of Financial Affairs*, filed on July 6, 2017, including all amendments and restatements thereto filed through the date of the conditional approval of the Disclosure Statement (Docket No. 43).

**2.1.117** "**Unclaimed Property**" shall mean any Distribution made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtors, the Liquidating Debtors, or the Plan Administrator as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Cases. Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to an address of a holder of an Allowed Claim and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no address to mail or deliver such property was available.

**2.1.118** "**Unimpaired**" shall mean a Claim that is not Impaired.

**2.1.119** "**Voting Classes**" shall mean Classes 1, 4, and 5, collectively.

**2.1.120** "**Voting Deadline**" shall mean September 1, 2017 at 5:00 p.m. Eastern time, the deadline by which Ballots must be received by the Balloting Agent, for such Ballots to be counted as voting in favor of or against the Plan. The Voting Deadline is established by the Court in the Order Conditionally Approving Disclosure Statement.

**2.1.121** "**Voting Procedures**" shall mean the procedures for submitting a Ballot to vote for or against the Plan as described in the Disclosure Statement.

**2.1.122** "**Voting Record Date**" shall mean August 8, 2017 as established in the Order Conditionally Approving Disclosure Statement.

**2.2** **Interpretation, Rules of Construction, and Other Terms.**

**2.2.1** Any term used in this Plan that is not defined herein, whether in this article or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

**2.2.2** The words "herein," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular article, section, or clause contained in this Plan.

**2.2.3** Unless specified otherwise in a particular reference, a reference in this Plan to an article or section is a reference to that article or section of this Plan.

**2.2.4** Unless otherwise provided for herein, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

**2.2.5** As contextually appropriate, each term stated in either the singular or plural shall include both the singular and the plural.

**2.2.6** In addition to the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to this Plan.

**2.2.7** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.2.8** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**2.2.9** All exhibits to this Plan and the Plan Supplement are incorporated into this Plan, and shall be deemed to be included in this Plan, and to the extent not annexed hereto, such exhibits and Plan Supplement shall be timely Filed in accordance with this Plan.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1** **Administrative Expenses and Priority Tax Claims.**

As provided in Section 1123(a) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving Distributions under the Plan. Rather, all such claims shall be treated separately as unclassified claims on the terms set forth in Article 4 of the Plan.

**3.2** **Classes of Claims and Interests.**

A Claim or Interest is classified in a particular class only to the extent that such Claim or Interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other class or classes. A Claim or Interest is in a particular Class only to the extent the Claim or Interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date. Notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest.

**3.3** **Identification of Classes.**

For purposes of organization, voting, and all Confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Expense Claims and Priority Tax Claims) and Interests shall be classified as follows:

**3.3.1** Class 1 – Allowed Secured Claims of Prepetition Lenders: Class 1 shall consist of two subclasses, FHI Class 1 and UGH Class 1. The estimated recovery for Allowed Secured Claims of Prepetition Lenders in Class 1 is unknown.

a. FHI Class 1: FHI Class 1 consists of the Allowed Secured Claims of Prepetition Lenders against FHI. FHI Class 1 is Impaired under the Plan, and holders of Claims in FHI Class 1 are entitled to vote to accept or reject the Plan.

b. UGH Class 1: UGH Class 1 consists of the Allowed Secured Claims of Prepetition Lenders against UGH. UGH Class 1 is Impaired under the Plan, and holders of Claims in UGH Class 1 are entitled to vote to accept or reject the Plan.

**3.3.2** Class 2 – Allowed Secured Tax Claims: Class 2 shall consist of all Allowed Secured Tax Claims. Each Secured Tax Claim in Class 2 shall be assigned to a separate subclass, which shall be treated as a class in the Case in which such Secured Tax Claim is Allowed. Each subclass in Class 2 is Unimpaired under the Plan, and holders of Claims in a subclass of Class 2 are conclusively presumed to have accepted the Plan and

therefore are not entitled to vote to accept or reject the Plan. The estimated recovery for Allowed Secured Tax Claims in Class 2 is 100%.

**3.3.3** <u>Class 3 – Allowed Other Secured Claims</u>: Class 3 shall consist of all Allowed Secured Claims other than those in Classes 1 and 2. Each Other Secured Claim in Class 3 shall be assigned to a separate subclass, which shall be treated as a class in the Case in which such Other Secured Claim is Allowed. Each subclass in Class 3 is Unimpaired under the Plan, and holders of Claims in a subclass of Class 3 are conclusively presumed to have accepted the Plan and therefore are not entitled to vote to accept or reject the Plan. The estimated recovery for Allowed Other Secured Claims in Class 3 is 100%.

**3.3.4** <u>Class 4 – Allowed Priority Non-Tax Claims</u>: Class 4 shall consist of all Allowed Priority Non-Tax Claims. Class 4 shall consist of two subclasses, FHI Class 4 and UGH Class 4. The estimated recovery for Allowed Priority Non-Tax Claims in Class 4 is unknown.

    a.    <u>FHI Class 4 - Allowed Priority Non-Tax Claims</u>: FHI Class 4 consists of all Allowed Priority Non-Tax Claims against FHI. FHI Class 4 is Impaired under the Plan, and holders of Claims in FHI Class 4 are entitled to vote to accept or reject the Plan.

    b.    <u>UGH Class 4 - Allowed Priority Non-Tax Claims</u>: UGH Class 4 consists of all Allowed Priority Non-Tax Claims against UGH. UGH Class 4 is Impaired under the Plan, and holders of Claims in UGH Class 4 are entitled to vote to accept or reject the Plan.

**3.3.5** <u>Class 5 – Allowed General Unsecured Claims</u>: Class 5 shall consist of two subclasses, FHI Class 5 and UGH Class 5. The estimated recovery for Allowed General Unsecured Claims in Class 5 is unknown.

    a.    <u>FHI Class 5 –Allowed General Unsecured Claims</u>: FHI Class 5 consists of Allowed General Unsecured Claims against FHI. FHI Class 5 is Impaired under the Plan, and holders of Claims in FHI Class 5 are entitled to vote to accept or reject the Plan.

    b.    <u>UGH Class 5 –Allowed General Unsecured Claims</u>: UGH Class 5 consists of Allowed General Unsecured Claims against UGH. UGH Class 5 is Impaired under the Plan, and holders of Claims in UGH Class 5 are entitled to vote to accept or reject the Plan.

**3.3.6** <u>Class 6 – Interests</u>: Class 6 shall consist of two subclasses, FHI Class 6 and UGH Class 6. The estimated recovery for Interests in Class 6 is 0%.

    a.    <u>FHI Class 6 – Interests</u>: FHI Class 6 consists of Interests in FHI. FHI Class 6 is Impaired under the Plan. Holders of Interests in FHI Class 6 will not retain their Interests under the Plan, and no

Distributions on account of such Interests will be made. Accordingly, holders of Interests in FHI Class 6 are conclusively presumed to have rejected the Plan, and therefore will not be entitled to vote to accept or reject the Plan.

b.   UGH Class 6 – Interests:  UGH Class 6 consists of Interests in UGH.  UGH Class 6 is Impaired under the Plan.  Holders of Interests in UGH Class 6 will not retain their Interests under the Plan, and no Distributions on account of such Interests will be made.  Accordingly, holders of Interests in UGH Class 6 are conclusively presumed to have rejected the Plan, and therefore will not be entitled to vote to accept or reject the Plan.

**3.4   Voting and Acceptance by Impaired Classes of Claims.**

Holders of Claims in Classes 1, 4 and 5 shall be entitled to vote separately to accept or reject the Plan.  An Impaired, voting Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

**3.5   Elimination of Classes for Voting Purposes.**

Any Class that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Interest, or a Claim or Interest temporarily allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under Bankruptcy Code § 1129(a)(8).

**3.6   Controversy Concerning Classification, Impairment or Voting Rights.**

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest holder under the Plan, whether before or after the Confirmation Date, the Court may, after notice and a hearing, determine such controversy.  Without limiting the foregoing, the Court may estimate for voting purposes the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Cases.

# ARTICLE 4

## TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

**4.1   Administrative Expense Claims.**

**4.1.1**  The DIP Loan is deemed Allowed as an Administrative Expense Claim in the amount of $ 1,250,000.00 plus all interest and fees accrued thereunder (the "**DIP Administrative Claim**").  The DIP Administrative Agent shall receive, on behalf of the DIP Lenders, on account of the DIP Administrative Claim, payment in Cash of all

Distributions under the Plan (excluding any Distributions of the Plan Administration Funding) until payment in full of the DIP Administrative Claim. Provided, however, to the extent that any portion of the DIP Administrative Claim is paid with proceeds from the liquidation of Collateral securing the FHI Prepetition Indebtedness or the UGH Prepetition Indebtedness, any proceeds that are later received from the liquidation of Collateral securing only the DIP Loan shall be deemed to have been used to pay the DIP Administrative Claim, and, subject only to the provisions of Section 5.1, (i) proceeds from the prior liquidation of Collateral securing the FHI Prepetition Indebtedness will be paid as Distributions to FHI Class 1, and (ii) proceeds from the prior liquidation of Collateral securing the UGH Prepetition Indebtedness will be paid as Distributions to UGH Class 1.

**4.1.2** On or before the Effective Date, the Debtors shall pay all amounts owing to the Professionals for all outstanding Professional Claims that have been awarded by the Court but which were unpaid as of the Effective Date. On or prior to the Administrative Expense Claim Bar Date, each Professional required to do so shall File with the Court a final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Objections to applications of Professional final fee applications must be filed and served on the Plan Administrator and the professionals to whose application the objections are addressed no later than twenty-four (24) days after filing of the relevant final fee application. The Liquidating Debtors shall pay any outstanding amounts owed to a Professional within ten (10) days after entry of a Final Order with respect to such Professional's final fee application. Any amounts previously paid to a Professional, but not supported by the Final order with respect to such Professional's final fee application, shall be paid directly to the DIP Administrative Agent, on account of the DIP Administrative Claim, within ten (10) days after entry of such Final Order.

**4.1.3** Each holder of an Allowed Administrative Expense Claim other than the DIP Administrative Claim and Professional Claims, including any Post-Petition Tax Claim, shall receive 100% of the unpaid Allowed amount of such Administrative Expense Claim in Cash in the ordinary course of business or as soon as reasonably practicable after the later of (a) the Effective Date, (b) payment in full of the DIP Administrative Claim, (c) the date on which such Administrative Expense Claim becomes Allowed, or (d) such date as is mutually agreed upon by the applicable Debtor or Liquidating Debtor and the Holder of such Allowed Administrative Expense Claim. To the extent that the holder of a Post-Petition Tax Claim holds a lien to secure its Claim under applicable state law, the holder of such Claim shall retain its lien until its Allowed Claim has been paid in full.

**4.1.4** Holders of Administrative Expense Claims (including, without limitation, holders of Professional Claims or Post-Petition Tax Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable Administrative Expense Claim Bar Date or Post-Petition Tax Claim Bar Date are forever barred from asserting such Claims against the Debtors, the Liquidating Debtors, or any of their respective property.

**4.1.5** Allowed Administrative Expense Claims and Allowed Professional Claims, but excluding the DIP Administrative Claim, shall be paid from the proceeds of the DIP Loan and Cash Collateral.

**4.1.6** Notwithstanding any other provision of the Plan, all fees, expenses, and other compensation arising after the Effective Date and due and payable to professionals retained by the Plan Administrator shall be paid by the Plan Administrator (a) first, from the Plan Administration Funding, and (b) thereafter, from the remaining assets of the Liquidating Debtors subject to the provisions of Section 7.7 hereof.

**4.2** **Priority Tax Claims.**

**4.2.1** Each holder of an Allowed Priority Tax Claim shall receive, after payment in full of the DIP Administrative Claim, on account of such Allowed Priority Tax Claim, payment in Cash of such holder's Pro-Rata share of all Distributions under the Plan (excluding any Distributions of the Plan Administration Funding) to be shared Pro-Rata with holders of all Allowed Priority Tax Claims until the payment in full of all Allowed Priority Tax Claims; provided, however, that claims by the Internal Revenue Code against FHI shall first seek payment from any amounts that can be offset from any refunds to which FHI may be entitled from income returns to be filed after the Effective Date.

**4.2.2** To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law. Provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G)of the Bankruptcy Code) shall be disallowed pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not be allowed to assess or attempt to collect such penalty from the Debtors, the Liquidating Debtors or their Estates, or their respective property.

**4.3** **Payment of Statutory Fees.**

All fees payable on or before the Effective Date (a) pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing; and (b) to the United States Trustee, shall be paid by the Debtors on or before the Effective Date. All such fees payable after the Effective Date shall be paid by the Plan Administrator.

**4.4** **Disallowance of Special Taxes.**

The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in Section 1146 of the Bankruptcy Code.

# ARTICLE 5

## TREATMENT OF CLASSES

**5.1     Treatment of FHI Class 1 and UGH Class 1 – Allowed Secured Claims of Prepetition Lenders.**

**5.1.1**   Treatment of FHI Class 1:  On the Effective Date or as soon as reasonably practicable thereafter, in full settlement, release and discharge of the Allowed Secured Claims of Prepetition Lenders against FHI, the Prepetition Agent shall receive, on behalf of such Prepetition Lenders, the proceeds of the liquidation of the Collateral securing the FHI Prepetition Indebtedness (excluding the Plan Administration Funding) after the payment in full of Allowed Administrative Claims, the DIP Administrative Claim, and Allowed Priority Tax Claims.   Any amount of the FHI Prepetition Indebtedness that remains unpaid after the liquidation of such Collateral shall be treated as a Deficiency Claim to be paid under FHI Class 5.

**5.1.2**   Treatment of UGH Class 1:   On the Effective Date or as soon as reasonably practicable thereafter, in full settlement, release and discharge of the Allowed Secured Claims of Prepetition Lenders against UGH, the Prepetition Agent shall receive, on behalf of such Prepetition Lenders, the proceeds of the liquidation of the Collateral securing the Intercompany Indebtedness Documents (excluding the Plan Administration Funding) after the payment in full of Allowed Administrative Claims, the DIP Administrative Claim, and Allowed Priority Tax Claims.  Any amount of the UGH Prepetition Indebtedness that remains unpaid after the liquidation of such Collateral shall be treated as a Deficiency Claim to be paid under UGH Class 5.

**5.1.3**   Additional Plan Administration Funding:  Notwithstanding the foregoing, prior to any Distribution to the Prepetition Lenders on account of the FHI and UGH Class 1 Claims, the proceeds of the liquidation of the Collateral securing the FHI Prepetition Indebtedness and UGH Prepetition Indebtedness shall be used to fund the Additional Plan Administration Funding.  Funding of the Additional Plan Administration Funding shall be made equally from the proceeds of the liquidation of the Collateral securing the FHI Prepetition Indebtedness and the Collateral securing the Intercompany Indebtedness Documents.  Upon funding of the total amount of the Additional Plan Administration Funding, all proceeds of the liquidation of the Collateral Securing the FHI Prepetition Indebtedness and the Intercompany Indebtedness Documents shall be distributed to the Prepetition Lenders on account of their FHI and UGH Class 1 Claims, respectively, until payment in full of such Claims.

**5.1.4**   Aggregate Distribution Ceiling: Notwithstanding the foregoing, the total collective Distributions made to the Prepetition Agent (on behalf of the Prepetition Lenders) on account of the Secured Claims in FHI Class  and UGH Class 1 shall not exceed $7.8 million (exclusive of amounts paid to satisfy the DIP Administrative Claim). Upon the Prepetition Agent's receipt of an aggregate of $7.8 million in collective Distributions on account of the Secured Claims in FHI Class 1 and UGH Class 1, (a) any

remaining, unpaid portion of the FHI Prepetition Indebtedness shall be deemed a Deficiency Claim under FHI Class 5, and (b) any remaining, unpaid portion of the UGH Prepetition Indebtedness shall be deemed a Deficiency Claim under UGH Class 5.

**5.2      Treatment of Class 2 – Allowed Secured Tax Claims.**

      **5.2.1**  <u>Subclasses</u>:  If there is more than one Allowed Secured Tax Claim, then each Allowed Secured Tax Claim shall be classified in a separate subclass (to be designated FHI Class 2A, 2B, 2C, etc., and UGH Class 2A, 2B, 2C, etc.).

      **5.2.2**  <u>Treatment of each subclass</u>:  Unless otherwise provided for pursuant to an order of the Court, each Holder of an Allowed Secured Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Secured Tax Claim, either: (a) at the sole discretion of the applicable Debtor or Liquidating Debtor (i) Cash equal to the unpaid portion of such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to Bankruptcy Code § 506(b) as soon as reasonably practicable after the later of (A) the Effective Date, (B) the date such Allowed Secured Tax Claim becomes Allowed, (C) the date such Allowed Secured Tax Claim becomes due and owing in the ordinary course of business, and (D) such date as is mutually agreed upon by the applicable Debtor or Liquidating Debtor and the Holder of such Allowed Secured Tax Claim, (ii) pursuant to Bankruptcy Code § 1129(a)(9)(D), deferred cash payments made on the first Business Day following each anniversary of the Effective Date over a period not exceeding five (5) years after the Petition Date, with a total value as of the Effective Date equal to the amount of such Allowed Secured Tax Claim, or (iii) reinstatement of the legal, equitable, and contractual rights of the Holder of such Allowed Secured Tax Claim; or (b) such other treatment as may be agreed to by the applicable Debtor and the Holder of such Allowed Secured Tax Claim in writing.

**5.3      Treatment of Class 3 – Allowed Other Secured Claims.**

      **5.3.1**  <u>Subclasses</u>:  If there is more than one Allowed Other Secured Claim, then each Allowed Other Secured Claim shall be classified in a separate subclass (to be designated FHI Class 3A, 3B, 3C, etc., and UGH Class 3A, 3B, 3C, etc.).

      **5.3.2**  <u>Treatment of each subclass</u>:  Unless otherwise provided for pursuant to an order of the Court, each Holder of an Allowed Other Secured Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim as soon as reasonably practicable after the later of (a) the Effective Date, (b) the date such Other Secured Claim becomes Allowed, (c) the date such Allowed Other Secured Claim becomes due and owing in the ordinary course of business, and (d) such date as is mutually agreed upon by the applicable Debtor or Liquidating Debtor and the Holder of such Allowed Other Secured Claim either: (a) at the sole discretion of the applicable Debtor or Liquidating Debtor, as applicable, (i) Cash equal to the unpaid portion of such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to Bankruptcy Code § 506(b), or (ii) reinstatement of the legal, equitable, and contractual rights of the Holder of such Allowed

Other Secured Claim; or (b) such other treatment as may be agreed to by the applicable Debtor and the Holder of such Allowed Other Secured Claim in writing.

**5.4 Treatment of FHI Class 4 and UGH Class 4– Allowed Priority Non-Tax Claims.**

Unless otherwise provided for pursuant to an order of the Court, each holder of an Allowed Priority Non-Tax Claim shall receive, after payment in full of the DIP Administrative Claim, Allowed Priority Tax Claims, and Allowed Secured Claims in Classes 1, 2 and 3, on account of such Allowed Priority Non-Tax Claim, payment in Cash of such holder's Pro-Rata share of all Distributions under the Plan (excluding any Distributions of the Plan Administration Funding) to be shared Pro-Rata with holders of all Allowed Priority Non-Tax Claims until all Allowed Priority Non-Tax Claims have been paid in full.

**5.5 Treatment of FHI Class 5 and UGH Class 5 – Allowed General Unsecured Claims.**

**5.5.1** <u>Treatment of FHI Class 5</u>: Unless otherwise provided for pursuant to an order of the Court or in the paragraph below, each holder of an Allowed General Unsecured Claim in FHI Class 5 shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, their Pro Rata share of all remaining property of FHI after (a) payment of the DIP Administrative Claim, Allowed Priority Claims, and Allowed Secured Claims in FHI Classes 1, 2 and 3 (solely as to the Collateral applicable to such Class), and (b) payment of the Plan Administrative Funding, until all Allowed General Unsecured Claims in FHI Class 5 are paid in full or all of the property of FHI's Estate has been distributed. Distributions to holders of Allowed FHI Class 5 Claims shall be made at such time or times that the Plan Administrator, in his discretion, determines that a Distribution to holders of Allowed FHI Class 5 Claims is appropriate, taking into consideration the number and amount of FHI Class 5 Claims that remain in dispute.

While FHI Class 5 shall include the Deficiency Claim of the Prepetition Lenders against FHI not otherwise satisfied in FHI Class 1, Distributions to the Prepetition Agent on account of such FHI Class 5 Deficiency Claim shall in no event exceed 50% of the total Distributions made to Holders of Allowed FHI Class 5 Claims until such time as all Allowed General Unsecured Claims that are not part of the Deficiency Claim of the Prepetition Lenders in FHI Class 5 are paid in full. Upon payment in full of such non-Deficiency Claim Allowed General Unsecured Claims, the Deficiency Claim shall receive 100% of any remaining Distributions to FHI Class 5, if any.

**5.5.2** <u>Treatment of UGH Class 5</u>: Unless otherwise provided for pursuant to an order of the Court or in the paragraph below, each holder of an Allowed General Unsecured Claim in UGH Class 5 shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, their Pro Rata share of all remaining property of UGH after (a) payment of the DIP Administrative Claim, Allowed Priority Claims, and Allowed Secured Claims in UGH Classes 1, 2 and 3 (solely as to the Collateral applicable to such Class), and (b) payment of the Plan Administrative Funding, until all Allowed General Unsecured Claims in UGH Class 5 are paid in full or all of the property of UGH's Estate has been distributed. Distributions to

holders of Allowed UGH Class 5 Claims shall be made at such time or times that the Plan Administrator, in his discretion, determines that a Distribution to holders of Allowed UGH Class 5 Claims is appropriate, taking into consideration the number and amount of UGH Class 5 Claims that remain in dispute.

While UGH Class 5 shall include the Deficiency Claim of the Prepetition Lenders against UGH not otherwise satisfied in UGH Class 1, Distributions to the Prepetition Agent on account of such UGH Class 5 Deficiency Claim shall in no event exceed 50% of the total Distributions made to Holders of Allowed UGH Class 5 Claims until such time as all Allowed General Unsecured Claims that are not part of the Deficiency Claim of the Prepetition Lenders in UGH Class 5 are paid in full. Upon payment in full of such non-Deficiency Claim Allowed General Unsecured Claims, the Deficiency Claim shall receive 100% of any remaining Distributions to UGH Class 5, if any.

**5.6     Treatment of FHI Class 6 and UGH Class 6 – Interests.**

The holders of Interests in both FHI Class 6 and UGH Class 6 will receive no Distribution on account of their Interests and such Interests shall be deemed cancelled as of the Effective Date.

## ARTICLE 6

## CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE

**6.1     Conditions Precedent to Occurrence of the Effective Date.**

In addition to any other conditions set forth in this Plan, the following are conditions precedent to the occurrence of the Effective Date:

> **6.1.1**   The Confirmation Order shall have been entered and become a Final Order in form and substance satisfactory to the Debtors.

> **6.1.2**   The DIP Agent shall have approved of the identity of the Plan Administrator;

> **6.1.3**   Execution of any other Plan Documents, including the Plan Administration Agreement.

> **6.1.4**   The Debtors may waive one or more of the conditions to the occurrence of the Effective Date.

**6.2     Notice of Occurrence of Effective Date.**

No later than one (1) Business Day after the day selected by the Debtors to be the Effective Date, the Debtors shall File a notice with the Court announcing the occurrence of the Effective Date.

# ARTICLE 7

# PLAN IMPLEMENTATION

**7.1    General Matters.**

The Debtors shall take such action as is necessary under the laws of the State of Texas, the laws of the State of Oklahoma, federal law, and other applicable law to effect the terms and provisions of the Plan and the Plan Documents.

**7.2    Post-Effective Date Governance.**

On the Effective Date, automatically and without further action, (a) any and all remaining officers or directors or managing partners of the Debtors shall be deemed to have resigned or withdrawn; and (b) the Plan Administrator shall have all right and authority necessary, as an officer or a representative of the Debtors and pursuant to the authority given to him in this Plan, to wind up the Debtors.

**7.3    Continuing Existence.**

      **7.3.1**    Except as otherwise specifically provided in the Plan, upon the Effective Date, all property of the Debtors shall remain with the Liquidating Debtors to be administered and Distributed by the Plan Administrator pursuant to the terms of the Plan. Upon the occurrence of the Effective Date, pursuant to Section 1141(b), the Liquidating Debtors shall hold the property and assets of their Estates, subject only to the Liens under the Indebtedness Documents, which shall be released at the time such property or assets are liquidated or the Allowed Secured Claims of the Prepetition Lenders are satisfied.

      **7.3.2**    Upon the Effective Date, the Debtors shall be thereafter referred to as the Liquidating Debtors and the Debtors' Estates shall be referred to as the Liquidating Estates.  From the Effective Date, the Liquidating Debtors shall continue in existence, to the extent necessary, for the purpose of facilitating the efforts of the Plan Administrator, including, but not limited to, the following: (a) wind up the remaining affairs of the Liquidating Debtors; (b) liquidate, by conversion to Cash or other methods, any remaining assets of the Liquidating Estates as expeditiously as reasonably possible; (c) enforce and prosecute claims, interests, rights, and privileges of the Liquidating Debtors; (d) resolve Disputed Claims; (e) administer the Plan, including distributing all Cash to holders of Allowed Claims in accordance with the Plan; and (f) file appropriate tax returns, if any.

      **7.3.3**    On the Effective Date, the charters and by-laws of the Debtors shall be deemed amended and restated as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall be deemed amended to, among other things: (i) authorize one (1) share of common stock, $0.01 par value per share of each Debtor, ownership of which shall be restricted to the Plan Administrator, (ii) provide, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a prohibition against the issuance of nonvoting equity securities, and (iii) limit the activities of the Liquidating Debtors to matters related to the

implementation of this Plan. Any amendment or modification to the Amended Charter and By-laws following the Confirmation Date, to the extent such modification or amendment changes the fundamental purpose of the corporation, (x) must be pursuant to authority granted by order of the Court and (y) no shareholder vote shall be required.

**7.3.4** Unless otherwise set forth in this Plan, upon the liquidation of all assets of the Liquidating Debtors pursuant to the Plan, the payment of all amounts due to be paid by the Debtors or Liquidating Debtors under the Plan, the disposal of all patient records as permitted by the Bankruptcy Code, and the filing by the Plan Administrator of a certification to that effect with the Court, the Liquidating Debtors shall be deemed dissolved for all purposes without the necessity for any further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith; *provided*, *however*, that the Plan Administrator shall file with the appropriate state authority a certificate of cancellation. From and after the Effective Date, the Liquidating Debtors shall not be required to file any document, or take any other action, to withdraw their business operation from any state in which the Liquidating Debtors were previously conducting their business operations.

**7.4    Plan Administrator.**

**7.4.1** The Debtors shall designate the Plan Administrator in the Plan Supplement. The Plan Administrator shall be deemed appointed upon entry of the Confirmation Order without further motion, application, notice, hearing, or other order of the Court.

**7.4.2** On and after the Effective Date, the Plan will be administered by the Plan Administrator on behalf of the Liquidating Debtors and all actions taken thereunder in the name of the Liquidating Debtors shall be taken through the Plan Administrator.

**7.4.3** After the Effective Date, the Plan and all remaining property of the Liquidating Estates shall be managed under the direction of the Plan Administrator as provided by the terms of the Plan and the Plan Administration Agreement. In the performance of his duties hereunder, the Plan Administrator shall have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary, including, without limitation, the filing of any necessary tax returns.

**7.4.4** From and after the Effective Date, the Plan Administrator may, among other things, use, pledge, acquire, and/or dispose of any Liquidating Estates' property free of the restrictions imposed under the Bankruptcy Code and without prior Court approval, provided that it is entirely in conformance with this Plan and the Plan Administration Agreement, and that the Court retains jurisdiction over the Plan Administrator and this Plan.

**7.4.5** The Confirmation Order shall provide the Plan Administrator with express authority to convey, transfer, and assign any and all property of the Liquidating Estates

consistent with the terms of the Plan and the Plan Administration Agreement and to take all actions necessary to effectuate same.

**7.4.6** The Plan Administrator shall have sole responsibility for making Distributions under the Plan and pursuing Causes of Action (including Chapter 5 Causes of Action) on behalf of the Liquidating Debtors and their Estates. The Plan Administrator shall also have standing to monitor and seek to enforce the performance of obligations under the Plan and the performance of other provisions of the Plan.

**7.4.7** Notwithstanding the foregoing, the Plan Administrator may not compromise and settle Claims and Causes of Action in an amount that exceeds $100,000 without an order of the Court after opportunity for notice and hearing.

## 7.5    Reporting.

The Plan Administrator shall provide monthly reports to the DIP Agent until such time as DIP Administrative Expense Claim and the Secured Claims under Class 1 are paid in full, which shall including a summary of all actions taken in the prior month.

## 7.6    Exculpation of Plan Administrator.

From and after the Effective Date, the Plan Administrator and his representatives shall not have or incur any liability to any Entity, including any holder of a Claim or Interest, for any act taken or omission made in good faith in connection with or related to their performance of the duties conferred upon them by the Plan and any Orders of the Court, except to the extent an act constitutes willful misconduct, or fraud. No holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action against the Plan Administrator or his representatives for taking any action in accordance with the Plan, to implement the provisions of the Plan or any order of the Court. In all respects the Plan Administrator and his representatives shall be entitled to rely upon the advice of counsel with respect to his duties and responsibilities under the Plan; provided, however, that the foregoing exculpation shall not apply to any act of willful misconduct or fraud.

## 7.7    Payment of Fees and Expenses to Plan Administrator.

The Plan Administrator may employ on behalf of himself, the Liquidating Debtors, and the Liquidating Estates, without Court order, professional persons, as such term is used in the Bankruptcy Code, to assist the Plan Administrator to carry out the duties under this Plan. The Plan Administrator and his professionals shall be compensated at their respective standard hourly rates for time spent administering the implementation of the Plan and the resolution of objections to Claims, if any are asserted, without further motion or application to the Court, subject until such time as the DIP Administrative Claim and the Secured Claims in Class 1 are paid in full, to review and approval of the DIP Agent. Compensation to the Plan Administrator and his professionals, as approved by the DIP Agent to the extent applicable, which approval shall not be unreasonably withheld, shall be made (a) first, from the Plan Administration Funding, and (b) thereafter, from the remaining assets of the Liquidating Debtors.

**7.8**     **Liquidation of Assets.**

On and after the Effective Date, the Plan Administrator may, without the approval of the Court, use, sell, assign, transfer, abandon, or otherwise dispose of at a public or private sale any property of the Liquidating Estates thereof for the purpose of liquidating and converting such assets to Cash, making Distributions, and administering and fully consummating the Plan.

**7.9**     **Investments.**

All Cash held by the Plan Administrator in any accounts or otherwise shall be invested in accordance with Section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Court.

**7.10**     **Accounts.**

The Plan Administrator may establish one or more interest-bearing accounts as it determines may be necessary or appropriate to effectuate the provisions of the Plan. To the extent reasonably possible, the Plan Administrator shall attempt to indemnify the funds in accordance with Section 345 of the Bankruptcy Code.

**7.11**     **Plan Administrator Indemnification.**

The Liquidating Debtors shall, to the fullest extent permitted by Texas law, indemnify and hold harmless the Plan Administrator and its agents, representatives, attorneys, professionals, and employees (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the implementation or administration of the Plan, if the Indemnified Party acted in good faith and in a reasonable manner.

**7.12**     **Resignation, Replacement, or Termination of Plan Administrator.**

From and after the Effective Date the Plan Administrator or his successor shall continue to serve in his capacity as the sole officer, director, and responsible person of the Liquidating Debtors through the earlier of (a) the date the Liquidating Debtors are dissolved in accordance with the Plan; and (b) the date the Plan Administrator resigns or is replaced or terminated. In the event that the Plan Administrator resigns or is terminated or is unable to serve, a successor shall be appointed by the Plan Administrator.

**7.13**     **Effectiveness of Securities, Instruments, and Agreements.**

On the Effective Date, the Plan Administrator, on behalf of the Liquidating Debtors, shall be authorized to take all actions necessary to execute and deliver all Plan Documents issued or entered into pursuant to the Plan, including, without limitation, any agreement entered into or instrument issued or in connection with any of the foregoing or any other Plan Document.

**7.14    Approval of Agreements.**

The solicitation of votes on the Plan shall be deemed a solicitation for the approval of all transactions contemplated by the Plan.  Entry of the Confirmation Order shall constitute approval of such transactions and authorization for the Plan Administrator and the Debtors, as appropriate, to execute and deliver any Plan Documents required thereby.

**7.15    Cancellation and Surrender of Existing Securities.**

On the Effective Date, all promissory notes, stock and/or bond certificates, or other instruments evidencing a Claim or Interest shall be canceled and the holders thereof shall have no rights by reason thereof, and such instruments shall evidence no rights, except the right to receive the Distributions, if any, to be made to holders of such instruments under the Plan.

**7.16    Release of Liens and Perfection of Liens.**

Except as otherwise provided in the Plan, any Plan Document or the Confirmation Order: (a) each holder of a judgment shall on the Effective Date (i) turn over and release to the Plan Administrator any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned or leased by the Liquidating Debtors or such Lien shall automatically, and without further action by the Liquidating Debtors or the Plan Administrator, be deemed released, and (ii) execute such documents and instruments as the Liquidating Debtors or the Plan Administrator may request to evidence such Claim holder's release of such property or Lien; and (b) on the Effective Date, all right, title, and interest in any and all property or assets of the Debtors shall vest in the Liquidating Debtors, subject only to the Liens under the Indebtedness Documents, which shall be released at the time such property or assets are liquidated or the Allowed Secured Claims of the Prepetition Lenders are satisfied.  Any such holder of a judgment that fails to execute and deliver such release of Liens within thirty (30) days of the Effective Date shall be deemed to have no further Claim against the Liquidating Debtors or their assets or property in respect of such Claim and shall not participate in any Distribution hereunder.  *Provided, however*, notwithstanding the immediately preceding sentence, any holder of a Disputed Claim shall not be required to execute and deliver such release until such time as the holder's Claim is Allowed or Disallowed.

**7.17    Further Transactions.**

On the Effective Date, the Plan Administrator and the Liquidating Debtors, as applicable, shall execute and deliver any Plan Documents necessary to effectuate and further evidence the terms and conditions of the Plan.

**7.18    Entry of Final Decree.**

As soon as is practicable after the Effective Date, the Plan Administrator shall File an application with the Clerk of the Court requesting the entry of a Final Decree closing the Cases; *provided, however*, the Plan Administrator shall not File an application for Final Decree until and unless the conditions to the Plan becoming effective as set forth herein have been fully met, all pending Causes of Action have been resolved by Final Order of a court of competent jurisdiction

or abandoned, all patient records have been disposed of as permitted by the Bankruptcy Code, and objections to Disputed Claims have been resolved by Final Order of the Court.

**7.19 Retention of Rights to Pursue Causes of Action.**

**7.19.1** Pursuant to Section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, the Plan Administrator (as the representative of the Liquidating Estates) shall retain and have the exclusive right to enforce against any Entity any and all Causes of Action (including Chapter 5 Causes of Action) that otherwise belong to the Debtors and arose before the Effective Date, including all Causes of Action of a trustee and debtor in possession under the Bankruptcy Code, other than those expressly released or compromised as part of or pursuant to the Plan or by other orders of the Court entered prior to the Effective Date. The Causes of Action retained hereby include, without limitation, all claims and Causes of Action listed or referenced in the Schedules, Disclosure Statement and/or in any of the Plan Documents.

**7.19.2** The Plan Administrator (as the representative of the Liquidating Estates) shall also retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by either Debtor against or with respect to all Claims asserted against the Debtors or property of the Debtors' Estates, other than those expressly released or compromised as part of or pursuant to the Plan or by other orders of the Court entered prior to the Effective Date. No right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by virtue of the Debtors' failure to identify such property in the Debtors' Schedules or the Disclosure Statement accompanying the Plan unless otherwise ordered by the Court.

**7.19.3** The Liquidating Debtors and the Plan Administrator will continue to review payments made by and transactions involving the Debtors prior to the Petition Date to determine whether preference and other actions to avoid such payments and transactions should be brought. Failure to specifically identify potential actions in the Plan shall not be deemed a waiver of any such action by the Debtors or any other party.

**7.20 Sale of Servers.**

Prior to the Petition Date, FHI transferred possession to approximately twenty-four (24) computer servers (the "Servers") to Foundation Bariatric Hospital of San Antonio, LLC (the "San Antonio Facility") with an agreement to sell them to the San Antonio Facility in exchange for $1.00 and continued access to the Servers for the Debtors and their successors to the information located thereon. At the time of this transfer of possession, FHI was in the process of vacating their office space in Oklahoma City and had no way to maintain the Servers. In addition, given that the Servers contain patient records and information, FHI needed to find someone who would agree to be the custodian of record for those records, to which the San Antonio Facility agreed. As such, this Plan seeks to formalize the sale of the Servers free and clear of all liens, claims and encumbrances, if any, to the San Antonio Facility. FHI believes that these terms are in the best interest of the Liquidating Debtors' estates because it alleviates the burden of paying for server maintenance and storage while maintaining access, if needed, for the Plan Administrator to pursue any claims and the liquidation of assets as approved in the Plan.

## ARTICLE 8

## DISPUTED CLAIMS, DISPUTED INTERESTS, AND MISCELLANEOUS DISTRIBUTION PROVISIONS

### 8.1    Objections.

An objection to the allowance of a Claim (other than an Administrative Expense) or Interest shall be in writing and may be Filed only by the Plan Administrator, on behalf of the Liquidating Debtors, at any time on or before the Claims Objection Deadline.  *Provided, however*, that nothing herein shall prevent a party in interest from objecting to Claims at their own expense.  The Plan Administrator, on behalf of the Liquidating Debtors, will prosecute any such objection until determined by a Final Order unless the Plan Administrator (a) compromises and settles such objection to a Claim or Interest by written stipulation subject to Court approval, if necessary, or (b) withdraws such objection.  The Plan Administrator shall have the authority to settle or compromise any Claim or Interest that would result in a Distribution of less than $20,000 without seeking approval of the Court.  Any such compromise or settlement that would result in a Distribution of $20,000 or more shall require the approval of the Court.

### 8.2    Amendments to Claims; Claims Filed After the Confirmation Date.

Except as otherwise provided in the Plan, after the Confirmation Date, a Claim may not be Filed or amended without the authorization of the Court and, even with such Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the Face Amount thereof.  Except as otherwise provided in the Plan, any new or amended Claim Filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtors or the Plan Administrator.

### 8.3    Distributions.

The Plan Administrator shall make Distributions to the holders of Allowed Claims on the terms set forth herein.

### 8.4    Distributions on Account of Disputed Claims.

No Distributions will be made on a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.  In determining the amount of Distributions to be made under the Plan to the holders of Allowed Claims on the Effective Date or a Distribution Date, the appropriate Distributions shall be made as if all the Disputed Claims as of such Distribution Date were Allowed Claims in the full amount claimed by the holders thereof, unless otherwise ordered or estimated by the Court.

### 8.5    Undeliverable or Unclaimed Distributions.

**8.5.1**   If a check issued by the Plan Administrator for Cash Distribution under the Plan is not cashed within ninety (90) days after issuance, at the discretion of the Plan Administrator, a stop payment order may be given with respect to the check and at the

election of the Plan Administrator, no further Distribution shall be made to such holder on account of such Allowed Claim. Such Allowed Claim shall be expunged, discharged and forever barred from assertion against the Liquidating Debtors or the Liquidating Estates.

**8.5.2** If the Distribution to any holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distribution will be made to such holder unless and until the Plan Administrator is notified in writing of such holder's current address; *provided, however*, that the Plan Administrator shall make reasonable efforts to contact the holder of such Allowed Claim, identify the correct mailing address, and resend the Distribution. All requests for the resend of a Distribution that is returned as undeliverable must be made before ninety (90) days after the date the first Distribution was made which was returned as undeliverable. After such ninety (90) days, the Allowed Claim of such holder shall be expunged, discharged and forever barred notwithstanding any federal or state escheatment laws to the contrary.

**8.5.3** No Cash Distribution of less than $100 shall be made by the Plan Administrator.

**8.6 Allocation of Consideration.**

The aggregate consideration to be distributed to a holder of an Allowed Claim under the Plan shall be treated as first satisfying an amount equal to the stated principal amount of such Allowed Claim and any remaining consideration as satisfying accrued but unpaid interest, if any, thereon.

**8.7 Transmittal of Distributions and Notices.**

**8.7.1** Any property or notice other than Cash Distributions made through this Plan in forms other than a check which an Entity is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity at the address indicated on any notice of appearance Filed by that Entity or his authorized agent prior to the Effective Date. If no notice of appearance has been Filed, notice shall be sent to the address indicated on a properly Filed proof of Claim or, absent such a proof of Claim, the address that is listed on the Schedules for that Entity. The date of Distribution shall be the date of mailing, and property distributed in accordance with this section shall be deemed delivered to such Entity regardless of whether such property is actually received by that Entity.

**8.7.2** A holder of a Claim or Interest may designate a different address for notices and Distributions by notifying the Debtors or, following the Effective Date, the Plan Administrator, of that address in writing. The new address shall be effective upon receipt by the Debtors or Plan Administrator, as the case may be.

**8.8 Method of Cash Distributions.**

Any Cash payment to be made pursuant to the Plan may be made, at the option of the Plan Administrator, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

**8.9 Distributions on Non-Business Days.**

Any Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**8.10 Withholding Taxes.**

Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Cash Distribution to a holder of an Allowed Claim shall be treated as part of the Distribution to such holder. All holders of an Allowed Claim shall be required to provide any information necessary to effect information reporting and withholding of such taxes. Each holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. If a request is made by the Plan Administrator to the holder of an Allowed Claim to complete forms related to withholding taxes and the holder of such Allowed Claim fails to comply with the request within ninety (90) days, such Allowed Claim shall be expunged, discharged and forever barred from assertion against the Liquidating Debtors or the Liquidating Estates.

**8.11 Setoffs.**

Except as otherwise provided in the Plan, agreements entered into in connection with the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Court, the Debtors or the Plan Administrator may, but will not be required to, setoff against any Claim and the Distributions made with respect to the Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights, and other Causes of Action of any nature that a Debtor may hold against the holder of such Claim; *provided, however,* that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of a Debtor, nor any provision of the Plan, shall constitute a waiver or release by such Debtor of any such claims, rights, and other Causes of Action that such Debtor may possess against such holder. To the extent a Debtor fails to setoff against a holder of a Claim or Interest and the Plan Administrator seeks to collect a claim from the holder of such Claim or Interest after a Distribution to the holder of such Claim or Interest pursuant to the Plan, the Plan Administrator shall be entitled to full recovery on its claim, if any, against the holder of such Claim or Interest.

**8.12    Charitable Gift.**

If at any time the Plan Administrator determines that the expense of administrating the assets of the Liquidating Estates so as to make a final Distribution on Allowed Claims is likely to exceed the value of the assets remaining in the Liquidating Estates, or the amount of Cash is not sufficient for a pro rata Distribution to the holders of Allowed Claims, the Plan Administrator shall have the authority to (i) reserve any amounts necessary to close the Cases, (ii) donate any balance to a non- denominational charitable organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code that is unrelated to the Plan Administrator, and (iii) close the Cases in accordance with the Bankruptcy Code or Bankruptcy Rules.

**ARTICLE 9**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**9.1    Rejection of Executory Contracts.**

**9.1.1**    On the Effective Date, all executory contracts and unexpired leases to which either Debtor is a party that have not otherwise been previously assumed or rejected pursuant to a Final Order of the Court or which are otherwise listed on **Exhibit A** hereto shall be deemed rejected without further notice or order.

**9.1.2**    The Confirmation Order shall constitute an order of the Court approving such rejections, pursuant to Section 365 of the Bankruptcy Code, effective as of the Petition Date.  Any party to an executory contract or unexpired lease identified for rejection as provided herein may, within the same deadline and in the same manner established for Filing objections to Confirmation, file any objection thereto.  Failure to File any such objection within the time period set forth above shall constitute consent and agreement to the rejection.

**9.2    Bar Date for Filing Rejection Claims.**

If the rejection of an executory contract or unexpired lease pursuant to this Plan gives rise to a Rejection Claim by the other party or parties to such contract or lease, such Rejection Claim, to the extent that it is timely Filed, shall be classified as a General Unsecured Claim; *provided*, *however*, any Rejection Claim arising from the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtors, the Estates, or after the Effective Date, the Liquidating Debtors and the Liquidating Estates, unless a proof of Rejection Claim is Filed and served on the Debtors or the Plan Administrator, as applicable, by the Rejection Damages Bar Date (which Rejection Damages Bar Date is thirty (30) days after the Effective Date).  The Plan Administrator shall file any objection to a Rejection Claim on or before the Claims Objection Deadline.

## ARTICLE 10

## RELEASES; PLAN INJUNCTION; EXCULPATION

**10.1 Releases.**

**10.1.1** <u>Release of the Debtors</u>. **Except as otherwise specifically provided by the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, of (a) all Claims and Causes of Action against, liabilities of, liens on, obligations of and Interests in, the Debtors and the assets and properties of the Debtors, whether known or unknown; and (b) all Causes of Action (whether known or unknown, either directly or derivatively through the Debtors) against, Claims (as defined in Section 101 of the Bankruptcy Code) against, liabilities (as guarantor of a Claim or otherwise) of, Liens on the direct or indirect assets and properties of, and obligations of successors and assigns of, the Debtors and their successors and assigns based on the same subject matter as any Claim or Interest or based on any act or omission, transaction, or other activity or security, instrument, or other agreement of any kind or nature occurring, arising, or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a proof of Claim or Interest was Filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on the Plan. Notwithstanding anything herein to the contrary, nothing in this Plan shall constitute a satisfaction and release of any Cause of Action against (a) any of the Debtors' current or former officers and directors of Claims arising prior to the Petition Date, except as set forth herein, or (b) any Non-Debtor guarantor or Non-Debtor obligor on any Claim related to or against the Debtors.**

**10.1.2** <u>Releases by the Debtors.</u> **Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, in their own capacity and as debtors in possession, the Liquidating Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, shall be deemed to have forever released unconditionally, waived and discharged, and hereby is deemed to release unconditionally, waive, and discharge on such date the Released Parties from any and all Causes of Action (including any derivative claims) and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon or related to any act or omission, transaction, event, or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtors, the Indebtedness Documents or other indebtedness for money borrowed by the Debtors, the filing of the Cases, the Cases, the Plan (including any Plan Documents), the Disclosure Statement, the pursuit of approval of the Disclosure Statement or**

confirmation of the Plan, or the pursuit of consummation of the Plan. Notwithstanding the foregoing release, no Released Party shall be released from acts or omissions which are the result of willful misconduct or fraud or from any obligations under the Plan or any document, instrument, or agreement executed to implement the Plan. Except as set forth herein, nothing in this Plan shall constitute a release against any of the Debtors' current or former officers and directors of claims arising prior to the Petition Date held by the Debtors and/or their Estates.

**10.1.3** <u>Release by Holders of Claims and Interests</u>. **As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, Liquidating Debtors, and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, event, or other occurrence, taking place on or prior to the Effective Date in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Indebtedness Documents or other indebtedness for money borrowed by the Debtors, intercompany transactions, the filing of the Cases, the Cases, the Plan (including any Plan Documents), the Disclosure Statement, the pursuit of approval of the Disclosure Statement or confirmation of the Plan, or the pursuit of consummation of the Plan, or any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding the foregoing release, no Released Party shall be released from acts or omissions which are the result of willful misconduct or fraud or from any obligations under the Plan or any document, instrument, or agreement executed to implement the Plan.**

**10.1.4** <u>Release Integral to Plan.</u> **The foregoing release provisions are an integral part of the Plan and are essential to its implementation. If and to the extent that the Court concludes that the Plan cannot be confirmed with any portion of the foregoing releases, the Debtors reserve the right to amend the Plan so as to give effect as much as possible to the foregoing releases.**

**10.2 Injunction.**

**10.2.1** <u>Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that all Entities who have held, hold, or may hold Claims against or Interests in the Debtors are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting, or continuing in any manner, directly, or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, the Debtors, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or otherwise recovering by any manner or</u>

means, whether directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtors, or any property of any such transferee or successor; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing Entities; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any Debtors; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

10.2.2    Furthermore, except as otherwise expressly provided in the Plan, for the consideration described in the Plan, as of the Effective Date, all Entities who have held, hold, or may hold claims released pursuant to this Article, whether known or unknown, and their respective agents, attorneys, and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date, with respect to any claim released pursuant to this Article, from (a) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any claim against any Released Party or the property of any of them; (b) seeking the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any Released Party or the property of any Released Party; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Released Party; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to any Released Party; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan.  In the event that any Entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this section or article if the Plan, then, upon notice to the Court, the action or proceeding in which the Claim of such Entity is asserted shall automatically be transferred to the Court for enforcement of the provisions of this section and article of the Plan.

**10.3    Exculpation.**

Neither the Debtors nor any of the Released Parties (collectively, the "**Exculpated Persons**") shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming, or consummating the Plan, including any settlement referenced therein, the Disclosure Statement, or any Plan Document.  The Exculpated Persons shall have no liability to the Debtors, any Creditor, Interest holder, any other party-in-interest in the Cases or any other Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including, without limitation, failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects the Exculpated Persons shall be entitled to rely upon the

advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing exculpation shall not apply to any act of willful misconduct or fraud.

# ARTICLE 11

# MISCELLANEOUS

## 11.1 Conflicts Between Plan and Confirmation Order.

In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

## 11.2 Term of Injunction or Stays.

Unless otherwise provided, any injunction or stay imposed by operation of Sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date rather than the Confirmation Date. Nothing in this section, however, shall be construed as a limitation of the permanent injunctions provided for in this Plan.

## 11.3 Retention of Jurisdiction.

Notwithstanding entry of the Confirmation Order, the Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

**11.3.1** To determine (a) any Disputed Claims, Disputed Interests, and all related Claims accruing after the Confirmation Date, including, but not limited to, rights and liabilities under contracts giving rise to such Claims; (b) the validity, extent, priority, and non-avoidability of consensual and nonconsensual Liens and other encumbrances; (c) pre-Confirmation tax liability pursuant to Section 505 of the Bankruptcy Code; and (d) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

**11.3.2** To allow, disallow, estimate, liquidate, or determine any Claim or Interest against the Debtors and to enter or enforce any order requiring the Filing of any such Claim or Interest before a particular date;

**11.3.3** To approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtors pursuant to Section 365 of the Bankruptcy Code and the terms of this Plan;

**11.3.4** To determine any request for payment of an Administrative Expense Claim or an Administrative Operating Expense entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, compensation of parties entitled thereto;

**11.3.5** To determine the allowance and payment of any Professional Claim;

**11.3.6** To resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim or Interest was Filed, or whether a Disallowed Claim or Disallowed Interest should be reinstated;

**11.3.7** To implement the provisions of the Plan and entry of orders in aid of Confirmation and consummation of the Plan, including, but not limited to, any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

**11.3.8** To modify the Plan pursuant to Section 1127 of the Bankruptcy Code;

**11.3.9** To adjudicate any and all Causes of Action that arose in the Cases prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date, including, but not limited to, any remands of appeals;

**11.3.10** To resolve any disputes concerning whether a person or entity had sufficient notice of the Cases, the applicable bar dates, the hearing on the approval of the Disclosure Statement as containing adequate information, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

**11.3.11** To determine any and all applications, Claims, Interests, pending adversary proceedings, and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Interests) in these Cases;

**11.3.12** To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**11.3.13** To seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

**11.3.14** To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, but not limited to, the Confirmation Order;

**11.3.15** To recover all assets of the Debtors and property of the Estates, wherever located, including any Cause of Action under Sections 544 through 551 of the Bankruptcy Code;

**11.3.16** To resolve any dispute relating to the approval and payment of the fees and expenses of the Plan Administrator, or his Professionals;

**11.3.17** To resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

**11.3.18** To hear any other matter not inconsistent with the Bankruptcy Code;

**11.3.19** To resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under the Plan;

**11.3.20** To enter the Final Decree closing the Cases;

**11.3.21** To appoint a successor Plan Administrator;

**11.3.22** To enforce the injunctions granted under this Plan; and

**11.3.23** To approve settlements relating to the above.

## 11.4 Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

## 11.5 Cram Down.

If all of the applicable requirements for Confirmation of the Plan are met as set forth in Section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtors may request the Court to confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of Section 1129(a)(8) of the Bankruptcy Code, on the basis that the Plan is fair and equitable as to the Debtors' Creditors and does not discriminate unfairly with respect to any Impaired Class of Claims against the Debtors that does not vote to accept the Plan as described in the Disclosure Statement. The Debtors reserve the right to alter the treatment of any Class to effectuate a cram down under Section 1129(b) of the Bankruptcy Code.

## 11.6 Modification of the Plan.

The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify this Plan prior to the Confirmation Date. After the Confirmation Date, the Debtors may, upon order of the Court, amend or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan. Further, because the Debtors have separate voting Classes, the Debtors reserve the right to file a new Plan, convert one or both of the Cases to a case under chapter 7, and/or take such other actions as they deem appropriate.

## 11.7 Withdrawal or Revocation of the Plan.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if the Effective Date does not occur, the Plan shall be of no further force or effect.

**11.8    Notices.**

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following:

Counsel for the Debtors:     Vickie L. Driver
**HUSCH BLACKWELL LLP**
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Phone: (214) 999-6100
Fax: (214) 999-6170

All notices and requests to Creditors and Interest holders shall be sent to their last known addresses.  The Debtors and any Creditors or Interest holders, may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.

**11.9    Governing Law.**

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

**11.10    Severability.**

Should any term or provision of the Plan be determined by the Court to be invalid, void, or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan.  If any term or provision of the Plan is of such a character as to deny Confirmation, the Debtors reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.11    All Claims.**

This Plan is intended to deal with all Claims against the Debtors of whatever character whether or not disputed, contingent, or liquidated and whether or not allowed by the Court under Section 502 of the Bankruptcy Code.  However, only those Claims Allowed under Section 502 of the Bankruptcy Code shall be entitled to receive the treatment or Distributions afforded by the Plan.

Dated: August 8, 2017        Respectfully submitted,

University General Hospital, LLC

*/s/ Richard Zahn*
Richard Zahn
Manager of Class B Manager,
Foundation Surgical Health Affiliates, LLC

Dated: August 8, 2017        Respectfully submitted,

Foundation Healthcare, Inc.

*/s/ Richard Zahn*
Richard Zahn
Chairman of the Board of Directors

Prepared by:

Vickie L. Driver
Texas Bar No. 24026886
Christina W. Stephenson
Texas Bar No. 24049535
**HUSCH BLACKWELL LLP**
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Phone: (214) 999-6100
Fax: (214) 999-6170
Email: vickie.driver@huschblackwell.com
Email: crissie.stephenson@huschblackwell.com

Proposed Counsel for the Debtors and Debtors-in-Possession

## EXHIBIT A

**[to be supplemented 5 days prior to the Confirmation Hearing]**