Vickie L. Driver
Texas Bar No. 24026886
Christina W. Stephenson
Texas Bar No. 24049535
**HUSCH BLACKWELL LLP**
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Phone: (214) 999-6100
Fax: (214) 999-6170
Email: vickie.driver@huschblackwell.com
Email: crissie.stephenson@huschblackwell.com

**COUNSEL FOR THE DEBTORS**

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| FOUNDATION HEALTHCARE, INC., | § | CASE NO. 17-42571-rfn-11 |
| | § | Lead Case |
| DEBTOR. | § | |
| | § | Complex Case |
| ------------------------------------------------------- | § | Jointly Administered |
| | § | |
| IN RE: | § | CHAPTER 11 |
| | § | |
| UNIVERSITY GENERAL HOSPITAL, LLC, | § | CASE NO. 17-42570 |
| | § | |
| DEBTOR. | § | Complex Case |
| | § | Jointly Administered |
| ------------------------------------------------------- | § | Under Lead Case |

### DECLARATION OF MICHAEL S. MILLER IN SUPPORT OF CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

Michael S. Miller, declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. I am over the age of eighteen (18) years, and am competent to testify to the matters set forth herein. I know the facts contained herein of my own knowledge.

2. I am the chief restructuring officer ("CRO") of Foundation Healthcare, Inc. ("FHI") and University General Hospital, LLC ("UGH," and collectively with FHI, the "Debtors"), debtors and debtors-in-possession in the above-referenced bankruptcy cases (the "Cases").

3. I make this Declaration in support of confirmation of the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation Dated as of August 8, 2017* [Docket No. 106] (as may be further amended, modified, or supplemented from time to time, the "Plan").

4. As the Chief Restructuring Officer, I have basic knowledge and familiarity with the Debtors' former day-to-day operations, business affairs, and books and records. I am also responsible for oversight of the Cases, including preparation of cash flow budgets and monthly operating reports.

5. I actively participated in the development of the Plan.

6. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by others associated with the Debtors, upon my review of relevant documents or upon my opinion based on my experience and knowledge of the Debtors' former operations, financial condition, and present financial outlook. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration.

## The Plan Satisfies Bankruptcy Code Section 1129

7. I reviewed the Plan and any accompanying or supporting material.

8. To the best of my knowledge, there is nothing untrue in the Plan and the accompanying exhibits.

9. The facts set forth herein are based on my personal knowledge and my understanding of the requirements of Chapter 11 of the Bankruptcy Code as they relate to confirmation of a plan of reorganization as has been explained to me in my discussions with the professionals I interacted with during the Cases and my participation in the major aspects of the Cases.

10. Based thereon, I believe the Plan complies with applicable provisions of Bankruptcy Code Section 1129.

11. **The Plan Complies with Bankruptcy Code Section 1129(a)(1).** Pursuant to Bankruptcy Code Section 1129(a)(1) of, a Chapter 11 plan must comply with the applicable provisions of Chapter 11 of the Bankruptcy Code.

    a. **The Plan Complies with Bankruptcy Code Section 1122.** Under the Plan, each class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such class. *See* Article 3 of the Plan. In addition, valid business, legal, and factual reasons exist for the separate classification of each of the Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between or among holders of Claims and Interests.

    b. **The Plan Complies with Bankruptcy Code Section 1123.** The Plan also complies with Bankruptcy Code Section 1123(a), which sets forth certain requirements with which every Chapter 11 plan must comply. The Plan fully complies with each such requirement. First, the Plan designates classes of Claims as required by Bankruptcy Code Section 1123(a)(1). *See* Article 3 of the Plan. Second, the Plan specifies which classes of Claims and Interests are not impaired and sets forth the treatment for such classes as required by Bankruptcy Code Sections 1123(a)(2) and (3). *See* Articles 3 and 5 of the

Plan. Indeed, the Plan specifies the treatment of all classes designated under the Plan, whether such Classes are impaired or not. *Id.* Third, the Plan provides for the same treatment for each Claim or interest within a particular class as required by Bankruptcy Code Section 1123(a)(4). *See* Articles 3 and 5 of the Plan. Fourth, as described in more detail below, the Plan provides for adequate means of implementation as required by Section 1123(a)(5). *See* Article 7 of the Plan.

c. In addition to the provisions required by Bankruptcy Code Section 1123(a), the Plan also contains numerous provisions permitted by Bankruptcy Code Sections 1123(b). Among other things, the Plan provides for the rejection of executory contracts. *See* Section 9.1 of the Plan. Each of these provisions of the Plan is consistent with Bankruptcy Code Section 1123(b) and permissible under applicable law.

12. **The Plan Complies with Bankruptcy Code Section 1129(a)(2).** Bankruptcy Code Section 1129(a)(2) requires that a plan proponent "compl[y] with the applicable provision of [title 11]." The Debtors have complied with all solicitation and disclosure requirements set forth in the Bankruptcy Code, the Bankruptcy Rules and the *Order (1) Conditionally Approving the Disclosure Statement, (2) Approving Form of Notice of Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (3) Establishing Procedures for Voting on the Plan, (4), Fixing Case Date for Returning Acceptances or Rejections of the Plan, (5) Fixing Date for Filing Objections to the Disclosure Statement and Confirmation, (6) Setting Deadlines by Which Governmental Entities Must File Proofs of Claim, and (7) Setting Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan* [Docket No. 102] (the "Disclosure Statement Order") governing notice, disclosure and solicitation in connection with

the Plan and the *Disclosure Statement in Support of Debtors' First Amended Joint Chapter 11 Plan of Liquidation* (the "Disclosure Statement").

    a.    On August 8, 2017, this Court entered the Disclosure Statement Order, which, *inter alia*, conditionally approved the Disclosure Statement and established procedures for the Debtors' solicitation of votes on the Plan.

    b.    On August 9, 2017, and in accordance with the Disclosure Statement Order, the Debtors caused the Plan, Disclosure Statement, Disclosure Statement Order, the Notice of Confirmation Hearing, and a ballot for voting to accept or reject the Plan (the "Solicitation Package") to be transmitted to all claimants entitled to vote upon the Plan.

13.    **The Plan Complies with Bankruptcy Code Section 1129(a)(3).** Pursuant to Bankruptcy Code Section 1129(a)(3), a Chapter 11 plan may be confirmed only if it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Plan has been proposed by the Debtors in good faith. The Plan provides the creditors and equity interest holders with the best possible recovery under the circumstances.

14.    **The Plan Complies with Bankruptcy Code Section 1129(a)(4) of the.** Bankruptcy Code Section 1129(a)(4) requires that a payment "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incidents to the case, has been approved, or is subject to approval of the court as reasonable." 11 U.S.C. § 1129(a)(4). Pursuant to Section 4.1.2 of the Plan, each professional person who holds or asserts a Fee Claim is required to file with the Bankruptcy Court, and serve upon all parties required to receive notice, a Fee Application within 30 days after the entry of an Order confirming the Plan.

15.    **The Plan Complies with Bankruptcy Code Section 1129(a)(5).** Bankruptcy Code Section 1129(a)(5) requires, among other things, that the plan proponent disclose the

identity and affiliations of any individuals proposed to serve as a director, officer, or voting trustee of the debtor. The Plan satisfies such requirements.

16. **The Plan Complies with Bankruptcy Code Section 1129(a)(6).** Bankruptcy Code Section 1129(a)(6) requires that any regulatory commission having jurisdiction over the rates charged by the debtor in the operation of its business approve any rate change of any rate that is within the jurisdiction of any governmental regulatory commission. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission. Therefore, the provisions of Bankruptcy Code Section 1129(a)(6) are inapplicable.

17. **The Plan Complies with Bankruptcy Code Section 1129(a)(7).** Bankruptcy Code Section 1129(a)(7) requires that a plan be in the "best interests" of creditors and interest holders. The "best interests" test requires that each holder of a claim or interest either accept the plan or receive or retain the property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. As set forth fully in the Liquidation Analysis set forth in Appendix 3 of the Disclosure Statement (the "Liquidation Analysis"), the "best interests" test is satisfied with respect to all impaired classes of Claims and Equity Interests. A liquidation under Chapter 7 as set forth in the Liquidation Analysis would adversely affect the ultimate proceeds available for distribution to holders of allowed general unsecured claims.

18. **The Plan Complies with Bankruptcy Code Section 1129(a)(8).** Herein, Bankruptcy Code Section 1129(a)(8) is satisfied. However, even if it were not, the Plan can be confirmed under § 1129(b) because the Plan does not unfairly discriminate against these classes

and there are no classes junior to those Classes receiving any recovery and the Plan is fair and equitable.

19. **The Plan Complies with Bankruptcy Code Section 1129(a)(9).** Bankruptcy Code Section 1129(a)(9) requires that, unless the holder of a particular claim agrees to a different treatment of such claim, persons holding claims entitled to priority under section 507(a) shall receive specified cash payments. Sections 4.1 and 4.2 of the Plan treat such claims as required by the Bankruptcy Code. Any Priority Tax Claims shall be paid, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on January 1, April 1, July 1, and October 1 of each year over a period not exceeding six (6) years after the date of assessment of the Claims.

20. **The Plan Complies with Bankruptcy Code Section 1129(a)(10).** Bankruptcy Code Section 1129(a)(10) requires the affirmative acceptance of a Plan by at least one class of impaired claims, "determined without including any acceptance of the Plan by any insider." At least one Class of Claims that is impaired under the Plan has accepted the Plan.

21. **The Plan Complies with Bankruptcy Code Section 1129(a)(11).** Bankruptcy Code Section 1129(a)(11) requires a specific finding that the plan is "feasible" as a condition precedent to confirmation. For purposes of determining whether the Plan satisfies the feasibility standard, the Debtors have analyzed their ability to fulfill their obligations under the Plan. The Debtors' projections identify the anticipated income and the anticipated remaining expenses of the Estates, and estimate the amount that will be distributed during the course of the Plan. The amounts set forth in the projections are reasonable estimates of the anticipated costs and funds which will be available, and demonstrate that the Plan is feasible.

22. **The Plan Complies with Bankruptcy Code Section 1129(a)(12).** Bankruptcy Code Section 1129(a)(12) requires that either all fees payable under Section 1930, title 28, United States Code, as determined by the court at the confirmation hearing, have been paid or that the plan provides for the payment of all such fees on the effective date of the plan. Section 5.5 of the Plan provides for the payment of all statutory fees and accordingly satisfies Bankruptcy Code Section 1129(a)(12).

23. **The Plan Complies with Bankruptcy Code Section 1129(a)(13).** Bankruptcy Code Section 1129(a)(13) provides that a plan shall provide for the "continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of [the Bankruptcy Code], . . . for the duration of the period the debtor has obliged itself to provide such benefits." 11 U.S.C. § 1129(a)(13). The Debtors are not obligated to provide such retiree benefits and, thus, Bankruptcy Code Section 1129(a)(13) is inapplicable.

24. **The Plan Complies with Bankruptcy Code Section 1129(a)(14).** Bankruptcy Code Section 1129(a)(14) provides that if a debtor is required to pay a domestic support obligation, the debtor has paid all amounts that first became payable after the date of the filing of the petition. The Debtors are not subject to a domestic support obligation and, thus, Section 1129(a)(14) is inapplicable.

25. **The Plan Complies with Bankruptcy Code Section 1129(a)(15).** Bankruptcy Code Section 1129(a)(15) specifies certain plan treatment for holders of allowed unsecured claims that object to confirmation of a plan proposed by an individual debtor. The Debtors are not individuals and, thus, Section 1129(a)(15) is inapplicable.

26. **The Plan Complies with Bankruptcy Code Section 1129(a)(16).** Bankruptcy Code Section 1129(a)(16) requires that all transfers of property shall be made in accordance with

any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. To the extent any transfers of property are made, such transfers will be made in accordance with applicable nonbankruptcy law.

### The Plan Satisfies Bankruptcy Code Section 1129(b)

27. The Plan complies with Bankruptcy Code Section 1129(b). I have been advised that the Court, if necessary, can confirm the Plan under Bankruptcy Code Section 1129(b) in the event a class of creditors does not vote to accept the Plan.

28. The Plan does not unfairly discriminates between creditors.

29. The Plan is fair and equitable with respect to all classes.

30. I have been advised that the fair and equitable requirement with respect to a class of unsecured claims which has rejected a plan or deemed to reject a plan requires that each holder of a claim in a rejecting class receive or retain property equal to the value of the claim or that holders of junior claims will not receive or retain any property under the Plan. No persons with junior claims will receive or retain any property under the Plan.

31. I have been advised that the fair and equitable requirement with respect to a class of interests which has rejected a plan or deemed to reject a plan requires that each holder of an interest in a rejecting class receive or retain property equal to the greatest of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest or that holders of junior claims will not receive or retain any property under the Plan. No persons with junior claims will receive or retain any property under the Plan.

32. Accordingly, the Plan complies with Bankruptcy Code Section 1129(b)(2)(B).

### The Plan Satisfies Bankruptcy Code Sections 1129(c)-(e)

33. **The Plan Complies with Bankruptcy Code Section §1129(c)**. The Plan is the only plan filed in the Cases. Thus Bankruptcy Code Section § 1129(c) is inapplicable.

34. **The Plan Complies with Bankruptcy Code Section §1129(d)**. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

35. **The Plan Complies With Bankruptcy Code Section §1129(e)**. These Cases are not small business cases, thus Bankruptcy Code Section 1129(e) is inapplicable.

### Sale Price of Servers

36. An objection to confirmation of the plan has been filed questioning the sale price for the Servers. I believe, based upon all information provided to me by Eric Lyons, UGH's Vice President of Materials Management and Kevin Turner, FHI's IT Director, all negotiations between FHI and relevant third parties, that all factors support that the sale price is fair and reasonable.

37. First, the Servers contained information protected by the federal law commonly known as HIPAA. As such, the Servers could not be transferred to just any individual in exchange for a purchase price; rather, the Servers must be transferred to a custodian of record under HIPAA, which places certain storage and access requirements upon any potential purchaser. The proposed Purchaser here agreed to accept this custodian role for no consideration. I am unaware of any other proposed purchaser who agreed to be a custodian of record for no consideration. UGH did undertake to find a qualified party to assume the role as custodian of record for UGH's patient records located in Houston. The quotes obtained by vendors to assume this role all requested consideration to act as a custodian of record for those patient records. In

fact, UGH requested many not-for-profit health services companies in the area to assume this role, and none agreed to do, irrespective of consideration.

38. Second, the HIPAA records located on the Servers related to patient information created by the hospitals managed by FHI, including UGH and the Purchaser. The Prepetition Lenders also had a lien on the Servers as well as the accounts receivable for which supporting information was located on the Servers. Accordingly, the sale of the Servers could not be accomplished without the release of the liens by the Prepetition Lenders and they were not willing to release their lien if the Servers were sold to a purchaser who would not assure that access would remain available for collection of the Prepetition Lenders' collateral.

39. Third, all records on the Servers were comingled and isolation and destruction of information not relating to the Purchaser would be cost prohibitive.

40. Fourth, Servers must be stored in specifically designed, climate controlled environments and are costly to move. If not maintained as such, the Servers would be rendered useless, and all information stored thereon lost. As of the Petition Date, the Servers were stored in FHI's leased office space in Oklahoma City; however, that lease was terminated during the case due to FHI's lack of funds to pay the rent and the fact that the space was otherwise unnecessary to FHI's liquidation. The Purchaser agreed to move the Servers and store them in an appropriate space at no cost to FHI.

41. Finally, the Servers were not new, and such age contributed to the resale value of such hardware. In sum, the Servers proved to be more of a liability than an asset and the Purchaser's "consideration" is actually far in excess of the $1.00 recited. Accordingly, I believe that the sale of the Servers to the Purchaser is for fair consideration.

**Releases**

42. Certain releases are included in the Plan for claims that have been analyzed and the conclusion drawn that the releases are proper and in the best interests of the Debtors and their creditors.

43. First, the releases provided to the Prepetition Lenders and Prepetition Agent relate to claims that, according to paragraphs H (5-6) and 18 in that certain *Final Order (1) Authorizing Secured Post-Petition Financing; (2) Authorizing the Use of Cash Collateral; (3) Granting Security Interests, Superpriority Claims, and Other Adequate Protection; and (4) Modifying the Automatic Stay* (the "DIP Order") [Docket No. 72] are already waived and released.

44. Second, the DIP Agent and DIP Lenders are receiving their releases in consideration for the consideration they have advanced in this case as debtor-in-possession financing. They are compromising their right to be paid in full upon confirmation, have capped what they will recover on account of their collateral to less than there stipulated secured debt, advanced funds for administration of this case, payment of priority claims, and preservation and destruction of patient records, all to their own detriment. I believe this to be adequate consideration for the releases granted in the Plan, notwithstanding my knowledge of no such causes of action against the DIP Lenders or the DIP Agent.

45. Third, releases of the Debtors' professionals for actions taken during the case are a normal request in a plan. I know of no cause of action against any of the Debtors' professionals or agents, including any preference or fraudulent transfer claim.

46. Fourth, the releases of FHI's members of the board of directors have been fully reviewed and purposefully tailored to include individuals against whom no liability would rest and whom have acted in support of the orderly liquidation of the Debtors. Specifically, Tom

Michaud, Stanton Nelson and Dr. Robert Moreno were not included as Released Parties in the Plan. However, Steven List and Richard Zahn served as members of the Special Committee for FHI in working through all efforts to reorganize and then liquidate FHI and its subsidiaries, and did so since January of this year with no attendant directors' and officers' liability insurance. I know of no actions taken by Steven List or Richard Zahn that would give rise to any claim against either of them by the Debtors. In addition, Mr. Lorin Patterson is a lawyer who served on the FHI Board and has taken no actions that to my knowledge would give rise to any claims by the Debtors against him.

## Liquidation Analysis

47. Certain questions were posed in an objection filed regarding the Liquidation Analysis as attached to the Disclosure Statement. This information is intended to address those concerns as raised by one unsecured creditor.

48. First, substantially all of the Debtors assets, including any cash or account receivable as well as contract causes of action, are pledged to the Prepetition Lenders and/or the DIP Lenders. Those liens are deemed to be valid, perfected and unavoidable pursuant to the DIP Order. Thus, valuation or estimation of the liquidation of these assets is irrelevant to any recovery by the general unsecured creditors – they are only able to recover from collateral exceeding the secured debt or unpledged assets and then only after payment of priority claims.

49. In addition, an objecting party also requested disclosure as to the status of assets located in Houston and any impact of Hurricane Harvey to their value. The short answer is that there is no impact. None of the Debtors' assets are in Houston other than patient records, which we believe to be unharmed. These records have no value to any creditor; in fact, it has cost the Debtor nearly $100,000 to maintain them and provide the proper notice to those patients of how

to obtain those files if needed or desired. Thus, Harvey is of no consequence to the value of the Debtors' assets.

50. Finally, after the Petition Date, the Debtors learned that there was no remaining furniture, fixtures, or equipment left in the Houston location; therefore, some of those values were adjusted in the Debtors' books and records to reflect the actual state of affairs.

51. I believe, after reviewing all of the information available to me, that the confirmation of the Plan provides the best chance for the highest recovery to all of the Debtors' creditors.

Dated as of September 5, 2017

_____
Michael S. Miller